**Appeal of K.F., Appellant**

**v.**

**P.M. and L.T., Appellees.**

**No. 91–FS–1121.**

District of Columbia Court of Appeals.

Argued Sept. 17, 1992.
Decided Dec. 28, 1992.

John J. Connelly, for appellant.

Beverly G. Stone, for appellee, L.T.

David Sitomer, for appellee, P.M.

Before ROGERS, Chief Judge, FARRELL, Associate Judge, and PRYOR, Senior Judge.

ROGERS, Chief Judge:

Appellant K.F. appeals the placement of his son, J.F., in the custody of the child's maternal grandmother, L.T., on the principal ground that he was denied his due process rights to a fair hearing. We agree, and therefore we reverse.

I

Appellant, the father, appeals the order of September 12, 1991, which continued the placement of his son with his maternal grandmother by order of July 19, 1991.[1]

J.F., who was born out of wedlock on August 30, 1981, to appellant (the father) and P.M. (the mother), has lived most of his life in his mother's custody. J.F. (the child) and his mother initially resided at the home of P.M.'s mother, L.T. (the grandmother), until the child was about one year old. At that time the mother moved to Maryland to live with the father. The child often stayed at the grandmother's home in order to be close to childhood friends. While living with the father, the mother used controlled substances.

After approximately five years, the mother left the father and, taking the child with her, returned to the grandmother's house. The father continued to support the child financially while he lived at the grandmother's home by giving money to the grandmother and reimbursing her for certain necessary items that she acquired for the child.

On July 27, 1990, the Corporation Counsel of the District of Columbia filed a neglect petition against the mother, alleging that she had not adequately cared for her children (J.F. and C.M.) and had failed to complete a recommended drug treatment course. In September, 1990, the child was placed with the mother, who was living at the grandmother's home, on condition she submit to weekly drug testing and follow through with any recommended drug therapy; a status hearing was set for October 18, 1990. On that date, the judge conditionally released the child into the custody of the grandmother. In both orders, the father was awarded liberal visitation rights. Thereafter, the mother signed a stipulation of neglect on November 26, 1990, in which she admitted having "left [the child and his sister, C.M.] in the care of unrelated care takers, the maternal grandmother, and the baby-sitter without making proper arrangements for [their] care," and failing in the past "to complete programs to help her recover from her drug problem." Following a disposition hearing on January 9, 1991, the trial judge placed the child under the protective supervision of the father, directing that he enroll the child in school, granting liberal visitation to the mother and listing caretakers for the child; a review hearing was set for July 11, 1991.

Before the review hearing occurred, the grandmother filed a motion on April 17, 1991, seeking custody of the child at her home with unlimited visitation by each parent.[2] During the May 24, 1991 review hearing, the parties explained to the trial judge that they had all consented to the child being placed with the mother during his summer vacation from school. Apparently consenting to this arrangement, the trial judge placed the child in the mother's custody under the protective supervision of the trial court, with liberal visitation rights for the father, and scheduled a review hearing for August 27, 1991. The trial judge held the grandmother's motion requesting custody of the child in abeyance, setting a court hearing on August 27, 1991.

On July 15, 1991, the grandmother filed a new motion requesting the placement of the child and his half-sister, C.M., at her home. The motion stated, based on information received from the grandmother,

1. Appellant also purports to appeal from the July 19, 1991, order. Since he filed his appeal on September 19, 1991, only the September 12, 1991, order is properly before the court. D.C.App.R. 4.

2. The motion alleged that there had been little visitation and no telephone conversations. By order of April 18, 1991, the court ordered that the child remain in his home with his father having custody, with visitation by the grandmother. A review hearing was set for May 24, 1991.

that the mother had apparently again used controlled substances and failed to pick the day-care provider for the half-sister, C.M., on July 12, 1991. The motion requested that the child be "re-enrolled" in a D.C. public school near the grandmother's home, beginning in September. It also sought a "re-evaluation or study of the placement of these three children." In response, the trial judge scheduled an emergency hearing for the next day, July 16, 1991, which was continued to July 19, 1991.

During the emergency hearing on July 19, 1991, the trial judge gave all counsel an opportunity to make representations on their client's behalf and to offer testimony. Counsel for the father objected to the shift in the nature of the emergency hearing, from a hearing on the mother's drug use to a contest for custody between the grandmother and the father that the judge had held in abeyance until August 27, 1991. The father's counsel argued also that the father claimed there were misrepresentations made about the money he had provided and school enrollment. The father also objected to the child staying in the grandmother's home where he had been subjected to physical abuse. The judge responded that she would hear any witnesses or representations.

Among the parties, only the grandmother testified and she primarily addressed questions regarding her own adult son's drug use and alleged physical discipline of the child at her home during the summer. While the grandmother's counsel argued that her client should receive custody,[3] counsel for appellant and the child's guardian ad litem recommended that the child be placed with the father.[4] The trial judge expressed concern about separating the child from his half-sister, and she found that the child had "spent the majority of his life in the home of [the grandmother], with the permission of both of his parents," and that it had "pretty much been his home." Accordingly, the trial judge ordered custody of the child be given to the grandmother, granting the father liberal visitation rights (and the mother supervised visits). A review hearing was set for August 27, 1991.[5] The father filed a motion for reconsideration, seeking custody of the child.[6]

3.  The social worker also recommended that the grandmother receive custody because the child had spent most of his life with his grandmother; he had ties to that community and a sibling was living in her house.

4.  The guardian ad litem emphasized the involvement of the father with his son and the importance of maintaining that relationship, noting that the father had a new job, that the child was still enrolled in school and had done well, and that the close contact with the stepsister could be maintained while the stepsister stayed with the mother. The guardian also argued that the child was fortunate to have an attentive father who has been a strong and caring influence in the child's life. The mother's counsel took the position that the child should not be placed with the grandmother. On appeal the mother now asserts that the court should approve the trial court's decision to place the child temporarily in the grandmother's custody.

5.  The order directed that there was to be "NO PHYSICAL DISCIPLINE of ANY KIND by [the grandmother], [the mother], [the father] nor [the adult child of the grandmother]. [The grandmother] to ensure no physical discipline of her grandchild by ANYONE."

6.  In the motion the father alleged that he had not been neglectful of his son in any way, asserting his constitutional rights as "a caring, custodial natural father" that are "superior to custodial rights, if any, that the maternal grandmother may lay claim to" and arguing that the trial judge had failed to accord him a preference in his effort to obtain the custody of the child. He noted further that the trial court had ordered the child, aged 10, and his half sister, age 3, to be separated when the child was originally placed with his father, that they have successfully communicated by telephone, and that there was no issue of bonding. He argued that in light of the judge's admonition against physical discipline of the child, the grandmother's testimony about such physical disciplining "should have been determinative." Claiming that the child has a more stable and physically and emotionally protected environment with his father than with any of the other parties, the father observed that placement with the grandmother continued to "entangle [the child] in the ongoing family feuding that is continuing between his mother and his grandmother."

In his brief the father states that he has "never received a decision from the court" on this motion. In view of subsequent proceedings involving the parties on the issue of custody, we view the trial judge's September 12, 1991, order, effectively to be a denial of appellant's motion for reconsideration. *See Carter v. Cathedral Av.*

At the grandmother's request, the August 27, 1991, review hearing was rescheduled for September 12, 1991. At the September 12, 1991, review hearing, the trial judge inquired about the father's failure to return the child to the grandmother and to ensure that the child was enrolled in school in the District of Columbia in accordance with the court's outstanding order. The trial judge declined to hear testimony from the father but allowed his counsel to make representations on the father's behalf. Counsel explained that while on vacation, the grandmother left the child with the father in Maryland, and the father, upon advice of counsel after the review hearing was continued, enrolled the child in school there, where he has always been. The trial judge, noting that she had held "a full evidentiary hearing at the last hearing that the parties were before the Court," ordered that custody should remain with the grandmother, and that the father return the child to the grandmother and turn over to her the child's prior report card and any other documentation necessary for enrolling the child in school.[7] The father filed his appeal that same day from both the July 19, 1991, order placing the child in the grandmother's custody, *see* note [1], *supra*, and the September 12, 1991, order continuing such placement.

## II

The father contends that the trial judge violated his due process rights by depriving him of a full and complete hearing on the issue of placement. According to the father, the denial of due process stems from the trial judge's refusal to hold a placement hearing on August 27, 1991, as she promised to do following the May 24, 1991, review hearing. He maintains that the trial judge, "without notice, transformed an emergency hearing on the mother's drug relapse into a contested placement hearing

*Co-Op., Inc.*, 532 A.2d 681, 683–84 (D.C.1987) (pendency in trial court of motion to alter or amend rendered appeal premature).

between the grandmother and the child's father ... without even hearing from the father," and then decided the matter against the weight of the only testimonial evidence given, which showed that the grandmother and her own son had violated the trial judge's order prohibiting corporeal punishment.

A noncustodial father has a "constitutionally protected 'opportunity interest' in developing a relationship with his child." *Appeal of H.R.*, 581 A.2d 1141, 1143 (D.C.1990) (per curiam) (citing *Lehr v. Robertson*, 463 U.S. 248, 103 S.Ct. 2985, 77 L.Ed.2d 614 (1983)). As a result, an unwed father who "demonstrated a full commitment to the responsibilities of parenthood by coming forward to participate in the rearing of his child ... acquires substantial protection under the Due Process Clause." *Id.* at 1173, 1187 (concurring opinion by Rogers, J.).

The record demonstrates that the father has grasped his opportunity interest. According to the grandmother's own testimony, the father provided a home for the child and his mother during the first part of his life. Furthermore, when the mother left the father and took the child to his grandmother's home, the father continued to provide financial support for the child. Although there is no evidence that the father sought legal custody of the child prior to the initiation of the neglect proceedings against the mother, the possibility of a third-party obtaining legal custody never arose until after the child was adjudicated a neglected child; the mother never proposed to give up the child for adoption. At that time the father promptly and continuously asserted his right to custody of the child. *See In re S.G.*, 581 A.2d 771, 783 n. 17 (D.C.1990).

The disposition of a neglected child pursuant to D.C.Code § 16–2320 does not

7. The trial judge again awarded the father liberal visitation rights and ordered that future visitation by the mother be supervised by the

terminate parental rights,[8] and it is subject to continuous review hearings until the child is 21 years of age. *See* D.C.Code §§ 16–2322, –2323. Nevertheless, temporary placement of a neglected child can substantially interfere with a natural parent's right to develop a relationship with a child. Consequently, the court has recognized that there are important reasons why the procedural protection of the Due Process Clause should extend to disposition proceedings involving the placement of a neglected child pursuant to D.C.Code § 16–2320. *See S.G., supra*, 581 A.2d at 786 (parental preference under *Lehr* applies to temporary custody orders) (Rogers, Chief Judge, and Ferren, Associate Judge, concurring).

Further, under the statute, the trial court is required, after finding that a child has been neglected, to hold a dispositional hearing after providing notice to the parent, guardian or custodian. D.C.Code § 16–2317(c). While the statute does not require the court to place a child with his or her natural parents, *see S.G., supra*, 581 A.2d at 784, the court has consistently held, and reiterated in *S.G.*, "that a child's best interests are presumptively served by being with a parent, provided that the parent is not unfit." *S.G., supra*, 581 A.2d at 785. In addition, the court has expressly acknowledged the importance of assuring that the trial court "explicitly recognized and accommodated the existence of that presumption." *Id.*

■ In the instant case, the father was not given the required notice that the July 19, 1991, proceeding was to be a dispositional hearing. Rather, he was advised that it was an emergency hearing held in response to the grandmother's motion indicating that the mother had relapsed into drug use during the summer while the court had placed the child with the mother. Counsel for the father objected precisely on the ground of lack of notice at the hearing,

and thereafter filed a motion for reconsideration. The trial judge had held in abeyance until August 27, 1991, the grandmother's April 1991 motion seeking custody. Unlike the situation in *S.G., supra*, 581 A.2d at 785, the father here had a legitimate basis for claiming surprise and did so.

In addition, he was denied the dispositional hearing that he anticipated would be held in response to the grandmother's April 1991 motion. The trial judge treated the September 12, 1991, hearing as though it were a review hearing. *See* D.C.Code § 16–2323(a)(1) & (3) (review of disposition is required every six months for child under age 6, and annual review for all other children, respectively). The judge did this notwithstanding the father's express request to be heard by the court on the question of the disposition of the child and the judge's prior orders holding the grandmother's motion in abeyance and scheduling a disposition hearing after the summer period when the child was placed with the mother.

Thus, it is clear that the father's statutory rights and his due process rights to notice and a fair hearing were violated in several respects: first, in July when the trial judge used an emergency review hearing to order a disposition without giving prior notice to the father,[9] and second, in September when the judge, having previously indicated that a disposition hearing would be held, proceeded to conduct a review hearing. The judge also did not acknowledge, much less address, the presumption in favor of a fit parent. No express finding was made, by clear and convincing evidence, that the father was unfit. *See In re N.M.S.*, 347 A.2d 924, 927 (D.C.1975). The judge's statement that she did not need to decide the rights of the adult parties, since the best interests of the child was the issue, fails to recognize the constitutionally protected interest at stake. The record clearly does not require a find-

---

Department of Human Services and not the grandmother.

**8.** *See In re B.K.*, 429 A.2d 1331 (D.C.1981) (placement of child under D.C.Code § 16–2320(a)(2) does not terminate parental rights).

**9.** The surprise and resultant unfairness to the father is not altered by the fact that, at the hearing, the judge expressed a willingness to hear any witnesses and representations.

ing that the father is unfit to have custody of the child. If anything it suggests the contrary (a matter for trial court consideration on remand), as well as that the father and grandmother have cooperated in the past in raising the child and that the grandmother holds the father in high regard.

Finally, the judge's stated reasons for placement of the child with the grandmother as opposed to the father do not withstand scrutiny. This case is unlike *S.G.*, *supra,* 581 A.2d at 784, where the child had never lived with the natural father and the father's home was unknown to the child. The judge's concern about separating the child from his half-sister failed to consider that this is what the judge had previously ordered, when the father was given custody.[10] Likewise, the judge's concern that the father (albeit on advice of counsel) had enrolled the child in the Maryland school system in contravention of the court order to return the child to the grandmother appeared to overlook that there was no evidence of bad faith by the father in view of the January 1990 order that the father enroll the child in school, and that it ultimately cannot excuse converting the emergency hearing into a disposition hearing. The judge also failed to recall on September 12, 1991, that she had previously ordered the grandmother to assure that there was no physical discipline of the child while the child was in the grandmother's custody, and did not respond to the father's concerns about the physical discipline of his child and the identity of the caretakers for the child while the grandmother and her adult son were at work.

Accordingly, we reverse the order of September 12, 1991, continuing the July 19, 1991, order, and we remand the case to the trial court for further proceedings.

---

**10.** There apparently was also another sibling of the child who was living with the father which would mean that the judge's concern about separating the child from his half-sister addressed only one aspect of a sibling relationship when there were two.