**In re A.G.; B.G., Appellant.**

Nos. 04–FS–451, 04–FS–739.

District of Columbia Court of Appeals.

Submitted Dec. 13, 2005.
Decided June 1, 2006.

Ardelia L. Davis, Alexandria, VA, appointed by the court, was on the brief for appellant B.G.

Robert J. Spagnoletti, Attorney General for the District of Columbia, and Edward E. Schwab, Deputy Attorney General, and Stacy L. Anderson, Assistant Attorney General, were on the brief for appellee.

Joseph W. Jose, Washington, DC, appointed by the court, filed a statement in lieu of brief for appellees J.R. and S.R.

A.R. Marblestein–Deare, appointed by the court as guardian ad litem, filed a statement in lieu of brief for A.G.

Before GLICKMAN and KRAMER, Associate Judges, and STEADMAN, Senior Judge.

STEADMAN, Senior Judge:

The natural father of A.G., a minor child within the neglect system, appeals the trial court's decision to award "permanent guardianship" to the child's maternal aunt and uncle under the relatively new Foster Children's Guardianship Act, D.C.Code § 16–2381 *et seq.*, which became effective in 2001.[1] The Act provides that guardianship decisions shall be based upon "a preponderance of the evidence." D.C.Code § 16–2388(f). The principal issue on appeal addresses whether the due process clause of the Constitution requires the more demanding standard of "clear and convincing evidence." We hold that it does not. We also reject appellant's further arguments, including whether the trial court abused its discretion in failing to obtain first-hand A.G.'s opinion of her own best interests in the matter and in failing to specify the frequency of visitation between appellant and A.G. Accordingly, we affirm the trial court's order.

## I. Facts

In 2001, L.G., who is A.G.'s mother, entered a stipulation of neglect. Consequently, the trial court placed A.G., with her maternal aunt and uncle, J.R. and S.R., and initially set the permanency goal as reunification with L.G. At the time, A.G. was eight years old. Following the passage of two years, the court changed A.G.'s permanency goal to permanent guardianship with J.R. and S.R.

In 2004, L.G. consented when the R.s petitioned for guardianship, but A.G.'s father, B.G., opposed the petition. The trial

---

1. The "permanent guardianship" provided for in this act relates only to children within the neglect system, and should not be confused with the guardianship provisions contained in D.C.Code § 21–2001, *et seq.*, which relate to protected or incapacitated individuals.

court held a hearing to determine whether it was in A.G.'s best interest to grant the guardianship petition. At the hearing, J.R. and S.R. both testified, as did A.G.'s two social workers. A.G.'s first social worker testified that the R.s are fit and proper caretakers of A.G., and that they "provide a safe and nurturing environment for her." The social worker observed "positive interaction" between the R.s and A.G., and a closeness between A.G. and the R.s' own children. The social worker and appellant had no contact with one another. A.G. had never expressed a desire to live with her father, and indeed, had never even mentioned him. A.G.'s second social worker likewise testified that she had had no contact with appellant, and that the R.s properly cared for A.G. Neither social worker recommended that A.G. be placed with appellant.

The R.s testified that A.G. was a "normal," "helpful," and "very outgoing" girl, and that she got along well with the R.s' own children. While A.G. was in the custody of her aunt and uncle, appellant did not call, provide financial child support, or send birthday cards or gifts to A.G. The R.s testified that if he wanted to, appellant would be welcome to come visit his daughter, so long as he was respectful of their situation.

Appellant did not testify or present any other evidence, and his counsel opposed the petition on the basis of appellant's status as the natural father. The trial judge analyzed the facts under the statutory factors set forth under § 16–2383(d), and concluded, "looking at all of the evidence presented, there is *preponderant evidence* that it is in A.G.'s best interest that she be placed with Mr. and Mrs. R., that they become her permanent, legal guardians" (emphasis added).

## II. "Preponderance of the Evidence" Standard

We face here, as a matter of first impression in this jurisdiction, the argument that § 16–2388(f) [2] of the guardianship statute is unconstitutional on its face because it permits the trial judge to grant a petition for permanent guardianship upon a "preponderance of the evidence" standard, rather than the more demanding standard requiring "clear and convincing" evidence.

We must first decide whether we may or should review this issue at all on this appeal. Appellant never objected to the trial court's use of the preponderance standard when it ruled on the guardianship issue. However, before us, appellees have not asserted that appellant waived the argument and that as a result we are to apply, at most, a "plain error" standard of review. The District's brief actually appears to invite plenary decision whether the preponderance standard survives constitutional attack, as applied to these guardianship proceedings. Therefore, the District might well be said to have "waived its waiver argument." *In re T.L.*, 859 A.2d 1087, 1090 n. 6 (D.C.2004) (quoting *United States v. Delgado–Garcia*, 362 U.S.App. D.C. 512, 515, 374 F.3d 1337, 1340 (2004)). Moreover, this constitutional issue of first impression has been briefed and involves important legal rights. In this posture, we elect to address the issue notwithstanding appellant's failure to raise any objection before the trial court. *See id.*; *In re K.A.*, 484 A.2d 992, 997 (D.C.1984) (addressing

---

2. "The court may enter, modify, or terminate a guardianship order after considering all of the evidence presented, including the Mayor's report and recommendation, and after making a determination based upon a preponder-ance of the evidence that creation, modification, or termination of the guardianship order is in the child's best interests." D.C.Code § 16–2388(f).

constitutional attack on termination of parental rights statute, despite that appellants raised it for the first time on appeal).

██ We turn to the merits of appellant's claim. It is a basic principle that "[p]arents have a due process right 'to make decisions concerning the care, custody, and control of their children.'" *In re A.H.*, 842 A.2d 674, 684 n. 14 (D.C.2004) (quoting *Troxel v. Granville*, 530 U.S. 57, 66, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000)). "The fundamental liberty interest of natural parents in the care, custody, and management of their child does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State." *Santosky v. Kramer*, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982). In light of these constitutional considerations, to completely terminate parental rights, the government must "support its allegations by at least clear and convincing evidence." [3] *Id.* at 748, 102 S.Ct. 1388.

██ Though we have held that the preponderance standard in the context of *neglect* proceedings is constitutional, *In re N.H.*, 569 A.2d 1179 (D.C.1990), neither the Supreme Court nor this court has had occasion to decide whether the clear and convincing standard-constitutionally mandated for termination of parental rights-also applies to the recently enacted permanent guardianship status in neglect proceedings.[4] However, in examining statutes similar to our guardianship act, both the Colorado Supreme Court and the Washington Court of Appeals have held-and we agree-that for statutes terminating only some of a parent's rights to his or her child, the preponderance of the evidence standard does not violate the Constitution's due process requirements.[5] *In re R.W.*, 10 P.3d 1271, 1276 (Colo.2000) (en banc); *Dependency of F.S.*, 81 Wash.App. 264, 913 P.2d 844, 846–47 (1996), petition for review denied, 130 Wash.2d 1002, 925 P.2d 988. Both courts apply the three-prong standard of *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18

3. Our statutory law so provides. D.C.Code § 16–2359(f) (2005) ("[a] judge may enter an order permanently terminating the parent and child relationship after considering all of the evidence presented and after making a determination based upon clear and convincing evidence that termination of the parent and child relationship is in the best interest of the child").

4. Prior to the enactment of the 2001 statute, it appears that there was no intermediary status between foster parent and adoptive parent. *See In re Baby Boy C.*, 630 A.2d 670, 677 (D.C.1993) (child psychiatry expert suggesting a compromise whereby, through "some kind of legal arrangement," the child could remain with the custodial adults, but with visitation rights for the natural father). According to the legislative history of this statute, the result was that too many children were forced to spend their youth migrating from one foster home to another. D.C. Council Report on Bill 13–763 at 1. To help remedy this problem, the legislation was intended to make

permanent guardianship a more viable option for children whose parental rights had not been terminated. *Id.*

5. California's intermediate appellate courts have also considered the issue, but there seems to be a split of authority which has yet to be resolved by that state's highest court. Compare *In re Guardianship Stephen G.*, 40 Cal.App.4th 1418, 1429–32, 47 Cal.Rptr.2d 409 (1995) (due process requires clear and convincing evidence in guardianship proceedings) and *In re Guardianship Jenna G.*, 63 Cal.App.4th 387, 391, 74 Cal.Rptr.2d 47 (1998) (same) with *In re Guardianship Diana B.*, 30 Cal.App.4th 1766, 1774, 36 Cal.Rptr.2d 447 (1994) (preponderance standard sufficient for guardianship proceedings). Other courts have indicated, without square holdings, that, in the context of family law, the clear and convincing standard should be limited to termination of parental rights. *See, e.g., Kent K. v. Bobby M.*, 210 Ariz. 279, 110 P.3d 1013, 1017 (2005); *In re Joshua Z.*, 26 Conn.App. 58, 63, 597 A.2d 842 (1991).

(1976) as articulated in the parental rights context in *Santosky, supra.* These cases require that a court balance (1) the private interests affected by the proceeding; (2) the risk of error created by the jurisdiction's chosen procedure; and (3) the countervailing governmental interest supporting use of the challenged procedure. *Mathews, supra,* 424 U.S. at 334–35, 96 S.Ct. 893; *Santosky, supra,* 455 U.S. at 754, 102 S.Ct. 1388. In substance, "the greater the deprivation, the greater the procedural protection provided to parents." *In re R.W., supra,* 10 P.3d at 1276. The similar analysis of the Colorado and Washington courts is in our judgment compelling and, without extensive reiteration, we follow and adopt it.

The preponderance standard complies with due process requirements of the Constitution because § 16–2388(f), like the statutes analyzed in the Washington state and Colorado cases, does not operate as a final and absolute termination of the natural parents' rights. Indeed, the statute explicitly retains many important rights for the natural parents: "Entry of a guardianship order does not terminate the parent and child relationship, including: [t]he right of the child to inherit from his or her parents; [t]he parents' right to visit or contact the child (except as limited by the court); [t]he parents' right to consent to the child's adoption; [t]he parents' right

to determine the child's religious affiliation; and [t]he parents' responsibility to provide financial, medical, and other support for the child." D.C.Code § 16–2389(c). Because "the impact of guardianship is not tantamount to termination," the statute does not call for the strictures of the clear and convincing standard.[6] *Dependency of F.S., supra,* 913 P.2d at 847.

Moreover, with respect to the risk of error, the statute reserves to the parent, under the court's continuing jurisdiction, the right to move to terminate the guardianship order at any time, and the court must do so if it would be in the best interests of the child. D.C.Code §§ 16–2389, –2390. The statute's lack of permanency further weighs in favor of the preponderance standard. *See* D.C.Code § 16–2390 (court's jurisdiction lasts until the child's eighteenth birthday, at which point the guardians' legal rights to the child expire). Because the court's interference between the natural parent and his child under the guardianship statute is significantly less than with the termination of parental rights,[7] the lower preponderance standard is accordingly warranted. *See Dependency of F.S., supra,* 913 P.2d at 846 (holding that the preponderance standard provides adequate due process because the guardianship order "results in neither an irreversible decision nor a complete severance of the parent's contact with the

**6.** The preponderance standard also could tend to further the guardianship statute's stated purposes of ensuring "that the constitutional rights of all parties are recognized and enforced in all proceedings conducted pursuant to this subchapter while ensuring that the fundamental needs of children are not subjugated to the interests of others." D.C.Code § 16–2381(2). The statute strikes this balance by "encompass[ing] a number of procedures aimed at protecting children from emotional and physical harm while at the same time seeking to repair and maintain family ties." *In re R.W., supra,* 10 P.3d at 1275. It provides for "a measure of flexibility ... to

allow the State to provide permanence for a child without terminating the parent's rights. The statute provides for secure placement of the child while authorizing both visitation between parent and child and continuing involvement by state agencies." *Dependency of F.S., supra,* 913 P.2d at 847.

**7.** The termination of parental rights "divests the parent and the child of all legal rights, powers, privileges, immunities, duties and obligations with respect to each other." D.C.Code § 16–2361.

child"); *In re R.W., supra,* 10 P.3d at 1278 (preponderance standard is constitutional "[b]ecause Petitioner is not deprived of all her parental rights, and because the trial court retains jurisdiction to modify its existing order"). In sum, because we are confident that the preponderance standard set forth under § 16–2388 comports with the Constitution's due process demands and carefully balances the natural parent's rights against the best interests of the child, the statute is not violative of the Constitution. *In re A.B.E.,* 564 A.2d 751, 754–55 (D.C.1989) ("While the rights of the natural parents to bring up their children are subject to the protection of the Due Process and Equal Protection Clauses of the Fourteenth Amendment ... these rights are not absolute, and must give way before the child's best interests" (citations omitted)).

### III. Other Issues

■ Using the "preponderance of the evidence" standard, the trial court properly applied the § 16–2383(d) factors, and we therefore affirm.[8] Appellant argues that the trial court erred in granting the guardianship petition because it never personally interviewed A.G., who was by then eleven years old, to ask her whether she would rather be with her father or with her aunt and uncle. Under § 16–2383(c), the trial court had the task of deciding whether

permanent guardianship with the R.s would be "in the child's best interest." Under § 16–2383(d), the court is required to consider each of five factors, the fourth of which is "[t]o the extent feasible, the child's opinion of his or her own best interests in the matter." As to that factor, the trial judge found that "A. has expressed at times a desire to be reunited with her mother. But there has been no testimony presented and no reports submitted maintaining that she has expressed a desire to reside with her father." Appellant was free to call A.G. as a witness to testify as to her wishes, press the court to interview the child personally, or introduce other evidence suggesting the child's preference for the father, but appellant did not do so. In this posture, we see no basis to overturn the trial court. *See In re A.R.,* 679 A.2d 470, 476–77 (D.C.1996) (trial judge did not err by declining either to interview the child in chambers or to attempt to expand in some other way the evidentiary record presented by the parties); *In re I.B.,* 631 A.2d 1225, 1232 (D.C.1993) (trial court "probably should have heard from [twelve- and eight-year-old children] directly, either in an informal interview in chambers or in the more formal setting of the courtroom," but no abuse of discretion in failing to do so).[9]

■ Appellant also claims that the trial judge erred in that its "decision to leave

---

8. The District also contends that, in any event, appellant's opposition to the guardianship petition was properly denied because he failed to prove himself to be a fit, unwed father who had seized his "opportunity interest," under the rubric of *Appeal of H.R.,* 581 A.2d 1141 (D.C.1990). While the District's position appears to have considerable merit on this record, we need not address that issue definitively, since we perceive no abuse of discretion in the trial judge's decision based on the factors set forth under D.C.Code § 16–2383(d). *See In re K.A., supra,* 484 A.2d at 997–98 (a finding of parental unfitness, separate from application of the five statutory

"best interest" factors, is unnecessary to terminate parental rights, "particularly where the natural parent no longer has custody").

9. We note, however, that our view might have been otherwise if the child's preference had been called into question by opposing evidence, or if A.G. had been a few years older. *See* § 16–2383(b) ("If the child is 14 years of age or older, the court shall designate the permanent guardian selected by the child unless the court finds that the designation is contrary to the child's best interests").

visitations to the sole discretion of the guardians had the effect of violating [appellant's] constitutional right to maintain a relationship with his daughter." Whether appellant has a constitutional right to visit his daughter is irrelevant to this case, because the trial court did not prohibit him from doing so. Section 16–2389(c)(2) of the guardianship statute expressly provides that a parent retains the "right to visit or contact the child (except as limited by the court)." The statute simply provides that "[t]he guardianship order *may* specify the frequency and nature of visitation or contact between relatives and the child." § 16–2389(d) (emphasis added). The statute's lack of mandatory language plainly makes this an optional undertaking. *In re D.B.*, 879 A.2d 682, 690–91 (D.C. 2005) (trial court's decision regarding visitation rights of a non-custodial parent reviewed for abuse of discretion). A.G.'s guardians indicated a willingness to permit appellant's visits with his daughter; should they deny such permission in the future, appellant is free to petition the court for a modification of the guardianship order. *Id.* at 691 ("there is no evidence supporting [mother's] contention that the [guardians] will misuse their discretion to improperly prevent [mother] from visiting her daughter").[10]

For the foregoing reasons, the order appealed from is

*Affirmed.*

---

10. Appellant contends that he failed to receive notice of the neglect proceedings. No such claim is shown to have been made before the trial court. Moreover, as the government points out, the claim is belied by the record, which shows that appellant or his counsel was present from the early stages of the neglect proceedings.