**In re D.S., K.M., B.S., R.S., T.S. & P.S.; J.M., Appellant.**

Nos. 10–FS–1556, 10–FS–1557, 10–FS–1558, 10–FS–1559, 10–FS–1560, 10–FS–1561.

District of Columbia Court of Appeals.

Decided Feb. 21, 2013.

Leslie J. Susskind, for appellant.

Irvin B. Nathan, Attorney General for the District of Columbia, Todd S. Kim, Solicitor General, Donna M. Murasky, Deputy Solicitor General, and Stacy L. Anderson, Assistant Attorney General, were on the petition for appellee.

Before BLACKBURNE–RIGSBY and BECKWITH, Associate Judges, and FERREN, Senior Judge.

**On Petition for Rehearing**

BECKWITH, Associate Judge:

In a child neglect case the trial court determines, first, whether a child has been neglected and then, if so, who the temporary custodian shall be pending further proceedings. No one questions that the court resolves the neglect issue by a preponderance of the evidence. D.C.Code § 16–2317(c)(2) (2012 Supp.). On petition for rehearing, however, the government questions our conclusion that unless a father has relinquished his parental "opportunity" and is found unfit, the custody issue must be determined, on remand, by clear and convincing evidence, not by the same preponderance standard used for the neglect finding. We disagree with the government and grant rehearing to clarify why our case law mandates the clear and convincing standard for the disposition—

for temporary custody—in this neglect case.

■ In adjudicating the custody issue in this case, *In re D.S.*, 52 A.3d 887 (D.C. 2012), we reversed the trial court's decision committing six children to the District of Columbia Child and Family Services Agency (CFSA). We concluded that the trial court applied an incorrect legal standard by failing to give meaningful weight to the children's father's right to presumptive custody—a right that has both statutory and constitutional roots. While not disputing reversal and remand, the government argues that, in adjudication of the best interest of a child, the preponderance standard always applies in both the neglect and the custody rulings. According to the government, in the wake of a mother's stipulation to neglect, our precedents do not require the government to rebut, by the high standard of clear and convincing evidence, the presumption favoring custody of an unwed, noncustodial father—even if he has grasped the opportunity to be involved in his children's lives and has been ruled a "fit" parent.

We disagree. Contrary to the government's contention, our case law reflects different burdens of proof for these altogether separate phases of a neglect proceeding when a father satisfies the "opportunity" and "fitness" criteria. The government's petition has convinced us, however, that we have not explained this distinction fully enough, so we take this opportunity to provide that necessary clarification.

■ At the outset, we note that "[t]here can be no doubt" that the parental preference applies to the temporary placement of a neglected child. *In re S.G.*, 581 A.2d 771, 786 (D.C.1990) (Rogers, C.J., concurring). As this court stressed in *In re S.G.*—in a two-judge concurrence that constituted the opinion of the court on the issue of temporary custody [1]—the decision about such custody has huge significance because of its tendency to lead to permanent custody, given the likely bonding between custodian and child. Thus, "[t]o leave unclear whether the parental preference applies to temporary custody orders would ignore the reality that such orders may effectively become permanent as a result of the delays attendant to litigation and appeal." *Id.*

As for the standard of proof required to rebut this parental presumption, more than twenty years ago our decisions endorsed application of the clear-and-convincing-evidence standard in a neglect disposition when applied to a noncustodial natural father who is seeking custody and who has grasped his constitutional "opportunity interest" and is ruled "fit" to raise his child. In *In re S.G.* itself, the two-judge majority concluded that the trial judge in that case had "properly proceeded" in applying the parental presumption, observing that the judge had "found by clear and convincing evidence that S.G.'s best interests for the immediate future" lay in remaining where she had always lived with her siblings and grandmother rather than with her father in another city.[2] *In re S.G.*, 581 A.2d at 786–87. Judge Schwelb stated for himself that "as-

---

1. Chief Judge Rogers's concurring opinion, which is joined by Judge Ferren, "represents the opinion of the court with respect to the issue addressed therein," *id.* at 786 n. *.

2. The trial court's failure to make any findings regarding the father's fitness did not present the "problem" it "might have presented" because the father, having long ago surrendered custody of S.G. to her mother, was not in the same position as a father who had "grasped his opportunity interest." *In re S.G.*, 581 A.2d at 787.

sum[ing], without deciding," that the presumption applied to a temporary placement of a neglected child, it had been "effectively rebutted" because the trial court had found it rebutted by clear and convincing evidence. *Id.* at 781.

In converting Judge Schwelb's mere assumption into a holding that the parental presumption applies to temporary custody, the majority in *In re S.G.* did not discuss the evidentiary standard required for rebutting the presumption, although all three members of the panel acknowledged the trial court's use of the clear and convincing standard. In doing so, this court focused upon the lasting prejudice to a noncustodial parent once the child begins bonding with a different custodian. That insight signified our perception that the parental preference, when applied to a neglect disposition, incorporated the same clear-and-convincing-evidence standard that is so critical to forestalling such prejudice in the context of permanent custody decisions.

■ Two years later, in *In re J.F.*, 615 A.2d 594, 595 (D.C.1992), this court stated more directly what we strongly implied in *In re S.G.* In *In re J.F.*, we reversed a temporary custody order placing a child with his grandmother over the request of an apparently fit noncustodial father who had substantially supported the child throughout his life. In the court's view, the judge "fail[ed] to recognize the constitutionally protected interest at stake" when she stated "that she did not need to decide the rights of the adult parties, since the best interests of the child was the issue." *Id.* at 595, 598. Reviewing a litany of reasons the trial judge's order violated the father's statutory and due process rights, the court stated: "The judge also did not acknowledge, much less address, the presumption in favor of a fit parent. No express finding was made, by clear and convincing evidence, that the father was unfit." *Id.* at 598 (citation omitted). The court's decision in *In re J.F.* to construe "the presumption" at issue as a statutory presumption with constitutional underpinnings that could only be rebutted by clear and convincing evidence followed logically from *In re S.G.*[3] We view these cases as clear-cut authority for our ruling that the trial court is required to apply the clear-and-convincing-evidence standard before rejecting the custodial preference of a father who has grasped his opportunity interest and is found to be a fit parent.[4]

3. In its petition for rehearing, the government argues that *In re J.F.* could not overrule several earlier decisions that hold that the preponderance standard applies in neglect proceedings. None of the cases it cites, however, involves anything akin to the circumstances here, in which a noncustodial father who has a close ongoing relationship with his children, who was not the subject of the neglect petition, and who has not been found to be unfit asked the court to place those children with him. *See In re B.K.*, 429 A.2d 1331, 1333 (D.C.1981) (reviewing only the neglect adjudication, not the disposition, in a case in which both parents were neglectful); *In re N.H.*, 569 A.2d 1179, 1181–83 (D.C.1990) (reviewing a mother's challenge to a neglect finding where no father was involved); *In re L.E.J.*, 465 A.2d 374, 375–377 (D.C.1983) (same); *see also In re M.D.*, 602 A.2d 109, 115 n. 17 (D.C.1992) (reversing the denial of visitation rights to a father where both parents had stipulated to the child's neglect); *In re K.O.W.*, 774 A.2d 296, 304 (D.C.2001) (reviewing an order depriving a father of any visitation with his sons).

4. On at least one occasion, the Superior Court has interpreted *In re S.G.* and *In re J.F.* as requiring clear and convincing evidence to overcome the parental presumption in favor of a fit parent who has grasped his opportunity interest at a neglect disposition hearing. *See In re P.B.*, 2003 WL 21689579, at *9 (D.C.Super., Mott, J.) (stating that "the Court of Appeals has recognized that because disposition decisions may have a lasting effect in practice, proof of the best interest of the child by clear and convincing evidence is required when a child is placed contrary to the wishes

Finally, contrary to the District's argument in its petition for rehearing, our use of the clear-and-convincing-evidence standard does not conflict with *In re A.G.*, 900 A.2d 677 (D.C.2006), where this court held—well more than a decade after *S.G.* and *J.F.*—that the preponderance standard governed the determination of custody in a guardianship proceeding following a finding of neglect. This court accepted the preponderance standard rather than insisting on the clear and convincing evidence required by statute for proceedings that wholly terminate parental rights. We justified this ruling by pointing out that the entry of a guardianship order does not terminate many of the natural parents' important rights, such as the right to visitation, the right to determine the child's religious affiliation, and the right of the child to inherit from his parents. *Id.* at 681. But we drew this distinction in a context fundamentally unlike the one in this case. The father's challenge in *In re A.G.* was limited to his status as a natural father per se; it did not involve a request for custody by a fit parent who had grasped his opportunity interest-a status, potentially true in this case, entitling the father to the strong presumption of custody rebuttable only by clear and convincing evidence.[5] In sum, the critical distinction between this case and *In re A.G.* is the difference between a potentially fit father who may well have grasped his opportunity interest and one who has not satisfied these two criteria.

 While some may perceive tension between *In re A.G.'s* holding and *In re J.F.'s* requirement of a more exacting standard of proof in particular neglect dispositions, the narrowness of the question before the court in *In re A.G.* makes that case fully reconcilable with the conclusion that where a noncustodial father who was not the subject of the neglect petition has satisfied the fundamental criteria justifying custody, the preponderance standard is insufficient to prevent the accelerating prejudice against his retention of parental

---

of a fit and competent parent") (citing *In re S.G.* and *In re J.F.*); *see also id.* (stating that "pursuant to *S.G.* and *J.F.*, where the court fails to honor the request of a fit and competent parent at a neglect disposition that a child be placed with that parent, the court must find by clear and convincing evidence that the alternate placement is in the child's best interest").

5. In *In re A.G.*, this court expressly declined to reach, as unnecessary, the government's final argument that the father's opposition to the guardianship petition lacked merit because he was unfit and had not seized his opportunity interest. 900 A.2d at 682 n. 8. One might argue that this court, in declining to address this argument, was drawing a bright line, announcing a preponderance standard for custody decisions in all neglect proceedings except for those proposing complete termination of parental rights. Yet because the court did not address, let alone come to grips with, the "fitness" and "opportunity" criteria central to our disposition

here—criteria stressed years earlier in *In re S.G.* and *In re J.F.*—we do not believe that *In re A.G.* is binding authority beyond the facts and issues it expressly addresses. It is worth noting that three years after *In re A.G.*, this court indicated that a clear-and-convincing-evidence standard may apply in other guardianship contexts. "We reiterate, that parents whose parental rights are intact do not lose the right to have their choice as to their child's adoption *or guardianship* being accorded substantial weight simply because they have not been model parents or have lost temporary custody of their children." *In re T.W.M.*, 964 A.2d 595, 601–02 n. 6 (D.C.2009) (emphasis added) (reversing trial court's denial of adoption petition of natural parents' chosen caregiver) (internal quotation marks omitted). *See also id.* at 602 (stating that a "parent's choice of a fit custodian for the child must be given *weighty consideration* which can be overcome only by ... clear and convincing evidence") (quoting *In re T.J.*, 666 A.2d 1, 11 (D.C.1995)) (emphasis added in *T.W.M.*).

rights once temporary custody is awarded to another party. None of the prior cases upon which the District relies in its petition for rehearing precludes us from reaffirming the presumption that a fit parent who has grasped his opportunity interest will be awarded temporary custody of his children absent clear and convincing evidence that placement with the CFSA is in the children's best interests.

In this case, no one has suggested that the father did not have an established relationship with his children, who spent weekends with him, spoke in terms of having two homes, and said they felt safe with him. As to fitness, the father was not the subject of the neglect petition and the court made no finding—and was not asked to make any finding—that he was an unfit parent. Absent a showing that the father has failed to meet the threshold criteria for custody, the government must prove by clear and convincing evidence that awarding him custody would be contrary to the children's best interest.

*So ordered.*