# District of Columbia
# Court of Appeals

**Nos. 15-FS-1274 & 15-FS-1275**

IN RE PETITION OF T.G.M. & T.C.M.,
    J.S.,

                      Appellant.



**ADA-30-14 &**
**ADA-31-14**

On Appeal from the Superior Court
of the District of Columbia

BEFORE: GLICKMAN and BECKWITH, *Associate Judges*; and BELSON, *Senior Judge*.

## J U D G M E N T

This case came to be heard on the transcript of record and the briefs filed, and was argued by counsel. On consideration whereof, and for the reasons set forth in the opinion filed this date, it is now hereby

ORDERED and ADJUDGED that the trial court's order is affirmed.

For the Court:

JULIO A. CASTILLO
Clerk of the Court

Dated: March 9, 2017.

Opinion issued *Per Curiam*.

*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

**DISTRICT OF COLUMBIA COURT OF APPEALS**

Nos. 15-FS-1274 & 15-FS-1275

IN RE PETITION OF T.G.M. & T.C.M.,
J.S., APPELLANT.

FILED 3/9/17
District of Columbia
Court of Appeals

Julio Castillo
Clerk of Court

Appeals from the Superior Court
of the District of Columbia
(ADA-30-14 & ADA-31-14)

(Hon. Florence Y. Pan, Associate Judge,
and Hon. Errol R. Arthur, Magistrate Judge)

(Argued October 20, 2016                    Decided November 18, 2016)[*]

*Ronald A. Colbert* for J.S.

*Ilana B. Gelfman* for T.G.M. and T.C.M., with whom *Jessica Kurtz* and *Melissa Colangelo* for Children's Law Center, guardian ad litem for Ja.S. and E.S., were on the brief for appellees.

*Karl A. Racine*, Attorney General for the District of Columbia, *Todd S. Kim*, Solicitor General, *Loren L. AliKhan*, Deputy Solicitor General, and *Rhondalyn Primes Okoroma*, Assistant Attorney General, filed a statement in lieu of brief for the District of Columbia.

---

[*] The decision in this case was originally issued as an unpublished Memorandum Opinion and Judgment (MOJ). It is now being published upon the court's grant of the guardian ad litem's motion to publish. The MOJ was issued prior to, and hence does not cite or discuss, this court's en banc decision in *In re Ta.L.*, 149 A.3d 1060 (D.C. 2016).

Before GLICKMAN and BECKWITH, *Associate Judges*, and BELSON, *Senior Judge*.

PER CURIAM: Appellant J.S. appeals the order of the Superior Court waiving his consent to the adoption of his biological children, Ja.S. and E.S., by their foster parents, T.G.M. and T.C.M. (the Ms), and granting T.G.M. and T.C.M.'s petitions for adoption. He argues that the trial court erred in finding him to be an unfit parent for Ja.S. and E.S., that the trial court erred in finding that he was withholding his consent to T.G.M. and T.C.M.'s adoption of Ja.S. and E.S. contrary to the best interests of the children, and that the trial court erroneously failed to give weighty consideration to J.S.'s choice of custodian for his children. For the reasons set forth below, we affirm the trial court's order.

## I.

Ja.S. was born in 2002, and her brother, E.S., was born in 2004. For most of their lives, Ja.S. and E.S. lived with their mother, Ed.S.[1] In June 2013, Ja.S. and E.S. were removed from Ed.S.'s care due to allegations of neglect, and the children were placed in the custody of their father, J.S., pursuant to a protective-

---

[1] Ed.S.'s parental rights were also terminated and her consent waived in the proceedings below. She has not appealed the trial court's order.

supervision[2] order.  In September 2013, J.S. was arrested for heroin distribution, in violation of the terms of the protective-supervision order.  J.S. was released to a halfway house pending trial in the drug case, but he absconded in October and went "on the run."  Since J.S. could not care for them, Ja.S. and E.S. were placed in foster care, in the custody of T.C.M., who is J.S.'s cousin, and her husband, T.G.M.

In February 2014, the Ms filed petitions to adopt Ja.S. and E.S.  An adoption trial was held in late September and early October 2014 before Magistrate Judge Errol Arthur.  J.S., who had been rearrested and was incarcerated at the time of the trial, opposed the Ms' petitions and proposed that the court place Ja.S. and E.S. with his mother (the children's grandmother), K.S.  Judge Arthur granted the Ms' petitions.  Judge Arthur found that J.S. and Ed.S. were unfit parents, that J.S. and Ed.S. had abandoned Ja.S. and E.S., that J.S. and Ed.S. were withholding their consents to the Ms' adoption of Ja.S. and E.S. against the children's best interests, that K.S. had abandoned her motion for guardianship and thus was not a potential

---

[2] *See* D.C. Code § 16-2301 (19) (2012 Repl.) ("The term 'protective supervision' means a legal status created by Division order in neglect cases whereby a minor is permitted to remain in his home under supervision, subject to return to the Division during the period of protective supervision.").

alternative caregiver for Ja.S. and E.S., and that even if he were to give weighty consideration to K.S. as a potential caregiver, he would find that it would clearly be against the best interests of the children to be placed with her. Upon J.S.'s motion for review, Associate Judge Florence Pan reviewed Judge Arthur's findings and approved them, except that she rejected his finding that J.S. had abandoned his children. Judge Pan affirmed the grant of the Ms' petitions to adopt Ja.S. and E.S.

## II.

J.S. asks this court to reverse the trial court's grant of the Ms' adoption petitions. This court reviews "the trial court's order granting adoption for abuse of discretion. . . . [W]e assess whether the trial court applied the correct standard of proof, and then evaluate whether its decision is 'supported by substantial reasoning drawn from a firm factual foundation in the record.'" *In re T.W.M.*, 964 A.2d 595, 601 (D.C. 2009) (quoting *In re T.J.*, 666 A.2d 1, 10 (D.C. 1995)). We are not limited to reviewing the findings of the associate judge; rather, "we review the magistrate judge's factual findings as the findings of the trial judge." *In re C.L.O.*, 41 A.3d 502, 510 (D.C. 2012).

### A. J.S.'s Parental Fitness

J.S. first argues that the trial court abused its discretion in finding him to be

an unfit parent for Ja.S. and E.S.

The presumption that a child's best interests will be served by being placed with his or her natural parent is overcome when the trial court finds by clear and convincing evidence that the natural parent is unfit. *See In re S.L.G.*, 110 A.3d 1275, 1285–86 (D.C. 2015); *In re J.F.*, 615 A.2d 594, 598 (D.C. 1992). Judge Arthur made such a finding, relying on evidence that J.S. was arrested within three months of Ja.S. and E.S.'s placement with him, that he failed to reach out to the Child and Family Services Agency or otherwise make arrangements for Ja.S. and E.S. after his arrest, that he absconded from the halfway house, and that he "failed to provide any financial, emotional, personal support" during the time after his arrest and abscondment. Judge Arthur found that this evidence, along with J.S.'s admission that he participated in "criminal activities," showed that J.S. "puts his own needs before his children's needs" and "clearly demonstrate[s] that he has consistently failed to make the right choices [or] exercise appropriate judgment [and that he] clearly lacks the insight as to how his actions affect his children." Judge Pan made similar findings. Both judges also made findings that Ja.S. and E.S. have special needs, due to Ja.S.'s history of trauma and depression and E.S.'s autism.

The trial court's findings are well supported by the record. And the trial court did not abuse its discretion in concluding the findings summarized above to be dispositive of the question of J.S.'s fitness. *See S.L.G.*, 110 A.3d at 1287 (listing a number of factors bearing on a parent's fitness, including the parent's "failure to maintain contact with, nurture, or support the child"; the parent's "involvement in criminal or other activities that are seriously inimical to a child's welfare"; and the parent's "inability or unwillingness . . . to provide a safe and stable home for the child, or to meet a particular child's special needs"). While there was significant evidence that J.S. loved Ja.S. and E.S., wanted to be involved in their lives, and took good care of them for the three or four months that they were in his custody, there was also evidence that J.S. distributed illegal drugs and had been incarcerated for the better part of Ja.S. and E.S.'s lives. It appears that J.S. shielded his children from his involvement in drug distribution, but the trial court did not abuse its discretion in finding that J.S.'s frequent incarcerations[3]

---

[3] J.S. argues that it was improper for the trial court to consider J.S.'s criminal history prior to the children being placed in his custody. There is no support for this argument in our case law. *See, e.g.*, *In re S.K.*, 564 A.2d 1382, 1389 (D.C. 1989) (Schwelb, J., concurring in part and dissenting in part) (explaining that bad acts evidence is typically excluded in criminal proceedings "unless it bears on a legitimate disputed issue," but that in the family-law context,

(continued…)

rendered him unfit to care and provide a stable home for two special-needs children.

### B. Waiver of Consent to Adoption

J.S. next claims that the trial court improperly waived his consent to the adoption of Ja.S. and E.S. because there was insufficient evidence that he was withholding his consent against the best interests of the children.

If a parent withholds his or her consent to his or her child's adoption, the parent's consent may be waived if the trial court finds by "clear and convincing evidence that the consent is being withheld contrary to the best interest of the child." *S.L.G.*, 110 A.3d at 1285. In making this determination, the trial court must weigh the statutory factors set forth in the termination of parental rights (TPR) statute, D.C. Code § 16-2353 (b) (2012 Repl.). *Id.* Here, Judge Arthur and Judge Pan both considered the TPR factors and properly found by clear and convincing evidence that J.S. was withholding his consent against Ja.S.'s and E.S.'s best interests.

(…continued)
"the judge must know as much as reasonably possible about [the child's] situation" and "the investigation must go beyond the straw that broke the camel's back").

The first TPR factor is "the child's need for continuity of care and caretakers and for timely integration into a stable and permanent home." D.C. Code § 16-2353 (b)(1). Judge Arthur found that this factor weighed in favor of terminating J.S.'s parental rights because the Ms had "demonstrated [that] they can continue to provide a safe, loving, and stable home environment" for Ja.S. and E.S., because the children were "thriving in [the Ms'] care and closely bonded" to them, and because J.S. was not "willing or able to provide [Ja.S.] and [E.S.] the continuity of care that they require and deserve." Judge Pan echoed these findings, also noting that according to the children's social worker, removing Ja.S. and E.S. from the Ms' home "would disrupt the important adjustments they are making and exacerbate feelings of abandonment."[4]

---

[4] J.S. suggests in passing that the children's social worker "was not a qualified individual who[] could render that kind of tes[ti]mony." This argument was not raised in the trial court below, and J.S. fails to cite any authority for the argument or otherwise elaborate on it in his brief. The argument is therefore waived. *See McFarland v. George Washington Univ.*, 935 A.2d 337, 351 (D.C. 2007) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (citation omitted)).

Both judges' findings are firmly supported by the record—specifically, the testimony of the social worker and the Ms, as well as the undisputed fact that Ja.S. and E.S. had already been removed from two different homes, Ed.S.'s and J.S.'s. And both judges properly found that the first TPR factor weighed in favor of terminating J.S.'s parental rights. *See C.L.O.*, 41 A.3d at 513 (approving the trial court's finding that the first TPR factor weighed in favor of waiving the parent's consent where the child had been moved multiple times, the child had spent a significant period of time with the proposed adoptive parent, and the child had formed a strong bond with the proposed adoptive parent); *see also In re K.D.*, 26 A.3d 772, 780 (D.C. 2011).

The second TPR factor is "the physical, mental and emotional health of all individuals involved to the degree that such affects the welfare of the child." D.C. Code § 16-2353 (b)(2). Judge Arthur's findings with respect to this factor are similar to those with respect to the first TPR factor, but he also noted that the Ms had taken steps to ensure that the children's educational needs were being met at school (such as obtaining an Individualized Education Plan for Ja.S.), maintained a structured environment at home to help E.S. with his autism, and arranged for therapy for both Ja.S. and E.S. that they had not been receiving when they lived

with J.S.  Judge Pan made similar findings.

The trial court did not err in finding that the second TPR factor weighed in favor of waiving J.S.'s consent.  The Ms, unlike J.S.,[5] had taken significant steps to address Ja.S. and E.S.'s special needs, *see C.L.O.*, 41 A.3d at 513 ("The judge may . . . consider a parent's emotional maturity, parenting skills, and ability to meet the emotional needs of the child."), and there is also support in the record for the conclusion that Ja.S. and E.S. would have been further traumatized if they had been removed from the Ms' care.

The third TPR factor is "the quality of the interaction and interrelationship of the child with his or her parent, siblings, relative, and/or caretakers, including the foster parent."  D.C. Code § 16-2353 (b)(3).  Judge Arthur found that Ja.S. and E.S. had formed close bonds with the Ms, the Ms' three biological children, and the Ms' extended family, and that, "[c]onversely, . . . [J.S. did not] have much of a

---

[5]  We acknowledge that J.S. could not have been expected to meet *all* of Ja.S. and E.S.'s special needs in the three- to four-month period that they lived with him.  And J.S. did make an effort to enroll E.S. in the Health Services for Children with Special Needs program.  It is possible that J.S. would have continued to make progress had he not been arrested in September 2013.  But J.S. *was* arrested, precluding him from addressing his children's special needs.

relationship with either [E.S.] or [Ja.S.]." Judge Pan approved these findings, explaining that "[t]he full integration of [Ja.S.] and [E.S.] into the family life of the [Ms] is clear from the record" and that "[a]lthough [Ja.S.] loves her father, Magistrate Judge Arthur did not err in ruling that her sporadic contact with [J.S.] was not enough to sustain a substantial and meaningful parental relationship."

Both judges' findings are well supported by the evidence in the record, and they properly found that the third TPR factor weighs in favor of waiving J.S.'s consent. An instructive case is *In re D.H.*, 917 A.2d 112 (D.C. 2007). In *D.H.*, the father had a long history of drug abuse and was incarcerated for much of his life. *Id.* at 117. Nonetheless, by the time of the adoption trial, he "had been free of drugs for seven or eight months, living with his mother, and working his first paying job." *Id.* As a result of turning his life around, the father "had become a regular fixture in his children's lives." *Id.* Nonetheless, when the court compared the father's "fragmentary" relationship with his children to the proposed adoptive parents' "warm" and close relationship with them, the court found that the third factor weighed in favor of the proposed adoptive parents. *Id.* at 119–20. J.S. had similarly "fragmentary" contact with his children in the early years of their lives, due to his lengthy incarcerations, and unlike the father in *D.H.*, it appears that J.S.

has been unable to change his lifestyle to make it more compatible with caring for children. *See also In re W.D.*, 988 A.2d 456, 462 (D.C. 2010) (explaining that "evidence that [the mother] had positive interactions with [her child was] not enough to overturn the trial court's assessment of the third factor").

The fourth TPR factor is "the child's opinion of his or her own interests in the matter." D.C. Code § 16-2353 (b)(4). In deciding that the fourth TPR factor weighed in favor of waiving J.S.'s consent, Judge Arthur relied on the fact that Ja.S. and E.S.'s words and actions both indicated that they viewed the Ms as parent figures. He noted that E.S. had commented that "this dimension [E.S.'s word for the Ms' home] is wonderful" and that Ja.S. had spontaneously told the Ms' family that T.C.M. was the "best mother she ever had." Judge Pan approved Judge Arthur's findings concerning the fourth factor.

The trial court's findings are well supported, and the trial court did not abuse its discretion in finding that the fourth factor weighed in favor of waiving J.S.'s consent. J.S. notes on appeal that "one of the stipulated facts is that one of the children loves her father and wanted to return to his care." But as the appellees note, this is not an accurate characterization of the stipulations at trial. Rather, the

stipulations at trial were that Ja.S. "loves her father" and that she "has an ongoing relationship with her father that she would like to continue." Both of these facts are compatible with Ja.S.'s desire to reside with the Ms.

The fifth TPR factor is "evidence that drug-related activity continues to exist in a child's home environment." D.C. Code § 16-2353 (b)(5). There is no evidence in the record that J.S. allowed drugs to be used around E.S. or Ja.S. Thus, this factor does not weigh in favor of waiving J.S.'s consent to the adoption.

Given that the trial court properly found that four of the five relevant TPR factors indicated that J.S. was withholding his consent to the adoption against the best interests of Ja.S. and E.S., the trial court did not abuse its discretion in waiving J.S.'s consent to the children's adoption.

### C. J.S.'s Proposed Custodian

J.S.'s final claim is that the trial court erred by failing to give weighty consideration to J.S.'s proposed custodian, his mother, K.S.

It is well established that where a parent has identified a preferred custodian for his or her child, the "parent's choice . . . must be given weighty consideration which can be overcome only by a showing, by clear and convincing evidence, that the [proposed] custodial arrangement and preservation of the parent-child relationship is clearly contrary to the child's best interest." *In re T.J.*, 666 A.2d 1, 11 (D.C. 1995). In the present case, however, although J.S. had identified K.S. as a possible custodian, and although K.S. had filed a motion for guardianship, Judge Arthur had dismissed K.S.'s motion after she had failed to show up on two consecutive court dates. This court has recognized that a parent's proposed custodian should not be ruled out merely because he or she has failed to take the formal steps necessary to take custody, *see In re D.M.*, 86 A.3d 584, 587 (D.C. 2014) ("Th[e] requirement [of weighty consideration] applies in connection with a petition to terminate parental rights whether or not a custody or adoption petition has yet been filed or is pending."), but this court has not held—and we do not hold today—that a trial court must give weighty consideration to a proposed custodian who filed a petition but whose petition has been properly dismissed or rejected. Because K.S.'s motion for guardianship had been dismissed, Judge Arthur did not abuse his discretion in determining that he was not required to give weighty

consideration to K.S. as a possible custodian.[6]

In any case, Judge Arthur *did* give weighty consideration to K.S:

> If I were to consider or give weighty consideration to [K.S.] as the child's custodian, I would find that there's clear and convincing evidence, you know, that [K.S.], who was selected by her son, is clearly not in the child's best interest. Here's why. There was testimony by both [T.C.]M. and [the social worker] about [K.S.'s] lack of involvement in the children's lives and . . . there was no evidence presented as to [K.S.]. And, again, while I did not consider [K.S.] in assessing the consents of the parents, it is worth noting that even if I were to determine that I had to give weighty consideration to [K.S.], I would find that there was clear and convincing evidence that it's clearly not in the children's best interest to be placed with her.

In most cases, such a brief explanation would be insufficient to demonstrate the trial court's "weighty consideration" of the parent's chosen custodian. But the explanation suffices in the present case because the only evidence presented by J.S. about K.S. was that K.S. had filed a guardianship motion and that J.S. consented to her guardianship of his children. Judge Pan approved Judge Arthur's analysis, relying on evidence of K.S.'s lack of contact with Ja.S. and E.S. and her failure to

---

[6] We also find it significant that K.S. neither requested reconsideration of nor appealed the trial court's dismissal of her motion for guardianship. J.S. did move for reconsideration of the dismissal.

prosecute her guardianship motion, as well as evidence that Ja.S. and E.S. had had a "stable and continuous placement with the [Ms] for over a year." Judge Pan's findings are supported by the record—in particular, by the testimony of T.C.M. and the children's social worker. Accordingly, we conclude that the trial court did not abuse its discretion in finding that it would clearly be against the best interests of Ja.S. and E.S. to be placed with K.S. *See In re R.E.S.*, 19 A.3d 785, 791 (D.C. 2011) (approving the trial court's finding, in an ineffective-assistance-of-counsel proceeding, that there was not a reasonable probability that the court would have placed the child with the father's preferred custodians, the father's relatives, where the relatives had had only a few early visits with the child and had failed to "follow through in qualifying themselves" to adopt the child by filing the proper legal paperwork, and where there was a "loving bond [between the child and the foster parent] that had been established [over a] year and a half [of living together]"); *K.D.*, 26 A.3d at 779 ("[I]t is generally contrary to a child's best interest 'to take [her] out of a loving home, when she ha[s] lived [there] for a substantial period of time as a result of her biological parents' inability or unwillingness to care for her.'" (quoting *R.E.S.*, 19 A.3d at 794) (second, third, and fourth alterations in original)).

We also reject J.S.'s argument that the trial court abused its discretion in dismissing K.S.'s guardianship motion due to K.S.'s failure to prosecute. K.S. filed her guardianship motion approximately one year after Ja.S. and E.S. had been placed in the Ms' custody, over half a year after the Ms had filed their adoption petitions, and mere weeks before the adoption trial was to begin. Judge Arthur informed K.S. of the importance of diligently pursuing her motion: If, "down the road, . . . you're not ready to proceed . . . it has . . . an effect . . . on the issues related to the placement of E.S. and [Ja.S.]. . . . [A]s long as your motion remains unresolved, . . . they're not allowed to achieve permanency . . . ." K.S. subsequently failed to appear for an October 7, 2014, court date, and Judge Arthur stated on the record that he would dismiss K.S.'s motion if she failed to appear on October 9. Judge Arthur asked J.S.'s counsel to relay this warning to K.S., and there is nothing in the record to suggest that J.S.'s counsel failed to do so.[7] K.S. then failed to appear on October 9, and Judge Arthur dismissed her guardianship motion at that time. Given the importance of resolving the Ms' petitions to adopt

---

[7] Indeed, there are reasons to believe that J.S.'s counsel *did* inform K.S. about Judge Arthur's warning: J.S.'s counsel had earlier helped K.S. to file her guardianship motion, and it was J.S.'s position during the adoption trial that if his parental rights were to be terminated, Ja.S. and E.S. should be placed with K.S. In any case, where it is J.S. complaining about the dismissal of K.S.'s guardianship motion, the onus was on J.S. to make a record below of K.S.'s lack of notice. No such record exists.

Ja.S. and E.S., and given K.S.'s lack of diligence and her failure to appear, Judge Arthur properly exercised his discretion. *See Morgan v. Leitner*, 444 A.2d 932, 932 (D.C. 1982) ("A decision to dismiss for failure to prosecute is committed to the 'sound discretion' of the court.").

Finally, we reject J.S.'s argument that Judge Arthur abused his discretion in permitting the Ms to present rebuttal evidence. When J.S. requested that Judge Arthur take judicial notice of K.S.'s guardianship motion and the fact that J.S. consented to K.S. being appointed guardian, Judge Arthur informed the parties that the Ms "would be entitled to call rebuttal evidence." Judge Arthur also asked J.S.'s counsel if she would like to present any evidence beyond the two judicially noticed items; counsel responded that she had no evidence to offer and rested J.S.'s case. Under these circumstances, J.S. cannot establish that he was prejudiced by Judge Arthur allowing the Ms to put on a rebuttal case. J.S. seems to argue that Judge Arthur should have limited the scope of the Ms' rebuttal case to the issue of whether J.S.'s consent was valid. But we disagree. J.S., by requesting that the court take judicial notice of K.S.'s guardianship motion and his consent to K.S.'s guardianship, put in issue the question whether there was a fit alternative custodian for the children that was preferred by the natural parent. It was within Judge

Arthur's discretion to allow the Ms to respond with evidence of K.S.'s lack of fitness.  *See Oxendine v. Merrell Dow Pharm., Inc.*, 506 A.2d 1100, 1113 (D.C. 1986) ("The scope of rebuttal testimony is committed to the sound discretion of the trial court . . . .").

## III.

For the foregoing reasons, we affirm the judgment of the Superior Court.

*So ordered.*