SCHWELB, Associate Judge:
T.S. (the mother) appeals from an order of the Superior Court, entered in a divorce proceeding, permanently removing her two children from her custody and awarding permanent custody to the children’s maternal grandmother. The mother claims, inter alia, that the trial judge exceeded her authority under the District’s divorce statute by placing custody in a non-party. The mother also contends that she was denied the procedural protections provided by the child neglect statute. We agree with both of the mother’s contentions. Accordingly we reverse.
I.
THE TRIAL COURT PROCEEDINGS
A The finding of abuse by the father.
The mother married M.C.S. (the father) on December 31, 1987. The parties had two children: a son, M.C.S., Jr., who was born on January 17, 1988, and a daughter, J.A.S., who was born on November 29, 1990. On September 11, 1991, the father filed a Complaint for Legal Separation in which he asked for custody of M.C.S., Jr. and J.A.S. On March 2, 1992, Judge Ricardo Urbma entered a consent order awarding the mother permanent custody of both children.
On May 3, '1993, the father filed an action for divorce. At the same time, he moved the court to modify the custody award. In support of his motion, the father alleged that the mother had interfered with his visitation rights, that the mother’s health had deteriorated, and that it would be in the best interest of the children to award custody to the father.
While the father’s motion for modification of custody was pending, the mother alleged that her daughter J.A.S., then two years old, had been sexually abused. Specifically, the mother reported that while she was changing her daughter’s diapers, she had noticed that the child’s vaginal area was red and swollen. The mother immediately took the child to the hospital. The matter was reported to the police, and on October 25, 1993, the Corporation Counsel filed a neglect petition alleging that the father had sexually abused his daughter.
*161 The father denied the allegation of abuse. He contended, inter alia, that the mother had fabricated the charge in retaliation for the father’s relationship with another woman, and also in order to thwart the father’s request for modification of custody. A fact-finding hearing was held from February 27 through March 20, 1995. On April 7, 1995, in a comprehensive written order, the trial judge found that the father had sexually abused his daughter in the presence of her four-year old brother. The judge found J.A.S. to be a neglected child. She ordered that all visitation between the father and his daughter be suspended and that the father enter a sexual offender treatment program. The judge placed J.A.S. in the custody of the mother under the protective supervision of the court. The father appealed and, on January 19, 2000, this court affirmed the judge’s decision in an unpublished Memorandum Opinion and Judgment. In re J.A.S., Nos. 95-FS-1131 & 96-FS-894 (D.C. Jan 19, 2000).
B. The award of custody to the grandmother.
The hearing on the father’s motion to modify custody began on July 29, 1996, and continued on sixteen different days over a period of more than fifteen months. The proceedings were held in the shadow of the finding that the father had sexually abused his two-year-old daughter. At a hearing on November 4, 1996, the father’s attorney stated that his client “still is formally asking for [custody]” but “recognizes there’s not a chance in hell that this court will award it to him given what’s occurred in the neglect jacket.” The father therefore requested that the children be placed, at least temporarily, with a third party custodian, namely, the maternal grandmother. In response to the father’s proposal, counsel for the mother filed an affidavit by the grandmother stating that the mother had been the primary caretaker of the children and that the grandmother had not sought, and would not accept, legal custody.
The father’s contention that the children should be removed from the mother’s custody was based on two specific allegations. First, the father claimed that J.A.S. had been abused by a fifteen-year-old cousin, and that the mother had not adequately protected her daughter from the abuse. According to the father, the mother had permitted J.A.S. to have further contact with the cousin, and she had continued to display the cousin’s photograph in the home. The mother vigorously denied the father’s allegations, and she introduced testimony from several witnesses, including the children’s therapists and the court’s probation officer, to the effect that the mother had been a resourceful, effective, and responsible parent to both children. Second, the father introduced evidence showing that the mother had a heated argument with a male neighbor which so frightened J.A.S. that she called 911'. The mother denied any inappropriate conduct in relation to this incident.
On November 4, 1996, the trial judge issued an oral order temporarily placing both children in the custody of their maternal grandmother. On March 2, 1998, following the conclusion of the protracted proceedings, the judge issued her written Findings of Fact, Conclusions of Law, and Order and made permanent the interim award of custody. The judge made a number of findings favorable to the mother, e.g., by noting both children’s improvement at school, but she ruled in the father’s favor with respect to the two incidents on which the father had based his motion. Describing J.A.S. as “an abused and fragile child,” the judge found that the mother had failed to provide adequately for her daughter’s needs following the alleged abuse of J.A.S. by her cousin. The judge wrote that the mother was “obviously aware” of “the necessary steps” which should have been taken in light of the new allegation of sexual abuse, but that the mother nevertheless failed to have J.A.S. medically examined. The judge further *162 found that the mother had “failed to seek counseling for [J.A.S.] specifically based on these allegations,” and that the mother had disregarded her daughter’s emotional well-being by failing to keep the cousin away from J.A.S.
With respect to the father’s second principal allegation, the judge found that the mother had “subjected [J.A.S.] to a disturbance in her home that was so disturbing that the child called 911 for help.” The judge found that the mother’s home environment was “unfit,” and that “but for his staying with his grandmother ... on that occasion, [J.A.S.’s brother] would have been subjected to the same unfit environment.”
In light of these findings, the judge held that the mother had “abdicated” her parental duties to the maternal grandmother; that “the children ... are thriving under the current temporary custody of their grandmother;” and that the grandmother “has provided for the emotional and physical needs for both children over the majority of their lives.” The judge concluded that “specific modification of custody of the children in [the maternal grandmother] is supported by the findings, is rationally related to the changed circumstances, and is calculated to promote the children’s best interest and welfare.” The judge therefore awarded permanent custody of both children to the grandmother.[1] This appeal followed.
II.
LEGAL ANALYSIS
The mother contends that the trial judge’s order removed her children from her custody, and placed custody in a non-party, without affording the mother the procedural protections provided by District of Columbia law. The mother also takes issue with the trial judge’s factual findings and, in particular, with the judge’s conclusion that denial of custody to the mother was in the children’s best interest. Because we largely agree with the mother’s procedural contentions, we do not reach the question whether the judge’s findings as to the mother’s alleged lack of fitness are supported by the evidence.
A. The rights of the parent.
The right of a parent to raise her child is a fundamental liberty interest protected by the Constitution. See Santosky v. Kramer, 455 U.S. 745, 753, 102 S.Ct. 1388, 71 L.Ed.2d 599 (1982); In re J.F., 615 A.2d 594, 597 (D.C.1992). In a child neglect proceeding, the best interests of the child are paramount, but' “ ‘a child’s best interests are presumptively served by being with a parent.’ ” In re S.G., 581 A.2d 771, 785 (D.C.1990); see also Shelton v. Bradley, 526 A.2d 579, 580 (D.C.1987). Even the temporary removal of a child from his or her parent’s custody “can substantially interfere with a natural parent’s right to develop a relationship with [her] child.” In re J.F., supra, 615 A.2d at 598. The permanent denial of custody to a natural parent affects the parent-child relationship even more gravely.
In fight of these considerations, courts must ensure, in the best interests of both parent and child, that the parent be afforded all of the protections provided by law. In the present case, we conclude that although the trial judge attempted to act conscientiously in what she believed to be the best interests of the two children, she exceeded her authority under the divorce statutes and deprived the mother of custody without affording her the procedural safeguards to which the mother was entitled under our child neglect laws.
B. The judge’s authority under the divorce statutes.
Although the divorce case was consolidated with the neglect proceeding against the father, the trial judge’s award of custo *163 dy to the grandmother was primarily grounded on the judge’s authority, as she understood it, in the divorce proceeding between the mother and the father. Specifically, the judge’s order was entered in response to the father’s motion to modify the 1992 consent order placing custody of the children with the mother. As the judge stated in her order, “this matter came before the Court ... on the Plaintiffs Motion for Modification of Custody Decree.” The mother claims that the divorce statutes do not authorize the trial judge to award custody of the children to their grandmother, especially where the grandmother has not consented. We agree.
The authority of the Superior Court to award custody in a divorce proceeding is governed by D.C.Code § 11-1101 (1995) and §§ 16-911, -914 (1997). In our view, these provisions authorize the court to determine custody only as between the parties to the proceeding, ordinarily the parents of the child or children. These statutes do not authorize the court to award custody to a non-party. Consequently, the divorce statutes do not include the procedural safeguards to which a parent is entitled before custody can be taken from the parent and awarded to a non-parent. The District’s child neglect statutes, on the other hand, do provide such safeguards, and any attempt to remove a child or children from the custody of a parent on account of the parent’s abuse or neglect must therefore be effected in a neglect proceeding rather than in a suit for divorce.
The Superior Court is vested with jurisdiction over “actions for divorce ... including proceedings ... for support and custody of minor children.” D.C.Code § 11-1101(1). The court may “determine who shall have the care and custody of a minor child or children pending the [divorce] proceeding! ].” D.C.Code § 16-911(a)(5). The court also retains continuing jurisdiction regarding custody “[a]fter the issuance of a decree of divorce.” D .C.Code § 16 — 914(a)(1). The trial judge held that these provisions grant the court “the authority to order custody of the children in a third party.”
Although the statutory language does not conclusively resolve the issue, we believe that the provisions that we have cited contemplate an award of custody only as between parents who are parties to the divorce proceeding. Section 11-1101 authorizes the court to decide the “custody of minor children” in “proceedings incidental” to “actions for divorce.” D.C.Code § 11-1101(1). An award of custody to a non-parent third party, based on a parent’s alleged neglect, cannot fairly be characterized as “incidental” to a divorce proceeding.
Other provisions relating to divorce likewise appear to have been drafted upon the assumption that any custody dispute before the court is between the parents, and does not involve persons who are not parties to the divorce proceeding. The statute provides, for example, that a custody determination may not be based on the “race, color, national origin, political affiliation, sex, or sexual orientation ... of a party.” D.C.Code §§ 16-911(a)(5), - 914(a)(1) (emphasis added). Where a parent is found to have committed an “intra-family offense,” the court may grant custody or visitation to the “abusive parent” under certain conditions, and may permit visitation by an abusive parent if the child and the “custodial parent” can be adequately protected. D.C.Code §§ 16-911(a-1), -914(a-1) (emphasis added). The court is authorized to “designate the parent who will make the major decisions concerning the health, safety, and welfare of the child that need immediate attention.” D.C.Code § 16-911(a-2)(2)(C) (emphasis added). The court may also modify or terminate custody on the motion of one of the “parents,” or on the court’s own motion. D.C.Code § 16-911(a-2)(4)(A) (emphasis added). The focus of these provisions on the “party” or the “parent” suggests that an award of custody to a non- *164 party was not within the contemplation of the legislature.
There are also practical reasons for concluding that the divorce statutes authorize the award of custody only to a parent who is a party to the proceeding. The parties to an action are properly before the court. Ordinarily, one parent has initiated the proceeding, while the other has been served with process. The court will, thus have no difficulty in enforcing its orders. The situation is quite different with respect to non-parties. In the present case, for example, there is no evidence that the grandmother has been served, and she is not represented by counsel. The divorce statutes contain no provision under which the court could enforce its orders against a non-party who has not submitted herself to the jurisdiction of the court. This is particularly true where, as in this case, the non-party — the maternal grandmother— has explicitly declined to accept legal custody of the children.
In awarding custody to the grandmother, . the trial judge relied on § 16-911(a-2)(1)(E), which authorizes “any other custody arrangement the court may determine is in the best interest of the child.” In our view, however, when read as a whole, § 16 — 911(a—2)(1) will not bear the construction that the judge placed on its last few words. In its entirety, this provision states that “[a] custody order may include (A) sole legal custody; (B) sole physical custody; (C) joint legal custody; (D) joint physical custody; or (E) any other custody arrangement the court may determine is in the best interest of the child.” § 16 — 911(a—2)(1). The most reasonable construction of this provision is that the court may award joint or sole legal or physical custody to one or both parents, but that the court may also adopt “any other custody arrangement” between the parents. Reading the statute in context, there is no reason to believe that the drafters had in mind a custody arrangement not involving either parent.
We do not suggest that a trial judge presiding over a divorce proceeding is powerless to act in the event that both parents appear to be unfit custodians. In such circumstances, the judge may bring his or her concerns to the attention of the Director of Social Services or of the Corporation Counsel; the latter may then institute proceedings pursuant to the child neglect statutes. See D.C.Code § 16-2305(a).[2] The judge’s authority under the divorce law, however, does not permit her to conduct a de facto neglect proceeding without invoking the procedures prescribed by the legislature for cases of this kind.[3]
C. The protections afforded by the child neglect statutes.
The trial judge issued her order removing the children from the custody of the mother on the basis of findings that the mother had failed adequately to protect her daughter from sexual abuse and that the children were living in an unfit environment. These grounds implicate the District’s child neglect statutes, and such allegations are ordinarily addressed in child neglect proceedings. By disposing of these issues under the rubric of an action for divorce, the trial judge dispensed with the protections routinely afforded to parents who have been charged with child abuse or neglect.
The procedural safeguards in D.C.Code §§ 16-2301 et seq., which govern child ne- *165 gleet proceedings, are detailed and substantial. Before a child can be removed from a parent’s custody, the Corporation Counsel must file a “verified” neglect petition that “sets forth plainly and concisely the facts” which are alleged to confer jurisdiction over the child upon the court. The petition must be served “on the parent, guardian, or other custodian of the child named in the petition.” See D.C.Code § 16-2S06(a). The court is required to conduct a fact-finding hearing on the petition, and must “make and file written findings in all cases as to the truth of the allegations” and “as to whether the child is neglected.” D.C.Code § 16-2317(b). The court must then “direct that a predisposition study and report ... be made by the Director of Social Services or a qualified agency ... concerning the child, his family, his environment, and other matters relevant to the ... disposition of the case.” D.C.Code § 16-2319(a). The predisposition study must detail “(A) the specific harms intervention is designed to alleviate; (B) the plans for alleviating these harms ...; (C) the estimated time in which the goals of intervention may be achieved or in which it will be known that the" goals may not be achieved; and (D) the criteria to be used to determine that intervention is no longer necessary.” D.C.Code § 16 — 2319(c)(1). In addition, if removal of a child from his or her parent is recommended, the predisposition plan must explain “the recommended type of placement; ... the reasons why the child cannot be protected in his or her home; ... the likely harm that the child will suffer” from separation from the parent, and ways to minimize that harm; and the “plans for maintaining contact ... to maximize the parent-child relationship consistent with the well-being of the child.” D.C.Code § 16-2319(c)(2). The court must then “address the matters set forth” in the predisposition study, D.C.Code § 16 — 2320(f), in order to determine whether the “presum[ption] that it is generally preferable to leave a child in his or her own home” has been overcome. D.C.Code § 16-2320(a)(3)(C). If the court orders the removal of a child from a parent’s custody, it may do so only for a period of no more than two years, unless that period is extended by further order of the court. D.C.Code § 16-2322. Finally, periodic reviews are required so that the court may determine whether it remains necessary for the child to be in the custody of a non-parent. D.C.Code § 16-2323.
It is undisputed and, indeed, indisputable, that the mother received none of the protections which we have catalogued above. We mention only a few of the steps, routinely taken in neglect proceedings, that were omitted in this case. The Corporation Counsel never charged the mother with neglect of either of her children, and the mother was thus deprived of the right not to be subjected to neglect proceedings unless the responsible law enforcement official has determined that the institution of such proceedings was warranted. See In re J.J.Z., supra note 3, 630 A.2d at 191-93 (holding that where the Corporation Counsel determines in good faith that the evidence of neglect is insufficient, a child neglect proceeding must be dismissed even where the child’s guardian ad litem objects). In addition, no predisposition study was prepared for the judge by the Director of Social Services or by any other comparable official, and the detailed planning prescribed by the statute in order to preserve the parent-child relationship was never done.[4] Finally, the order placing the children in the custody of the grandmother was of unlimited duration.
D. The judge’s authority in the neglect proceeding.
On November 4, 1996, the trial judge held a review in the 1993 neglect proceeding and combined it with the hearing in the divorce case on the father’s *166 motion for modification of custody. Although the trial judge grounded her 1998 award of custody to the grandmother primarily on what she perceived to be her authority in a divorce proceeding, she also stated in her order that “the domestic relations component of this consolidated case is thoroughly interlaced with the neglect component and neglect legal criteria.”
The neglect proceeding with which the divorce case was consolidated was initiated by the Corporation Counsel in 1993 against the father. The mother was not alleged to have neglected either of her children.[5] In fact, the mother was the complaining witness, and the proceeding was instituted as a result of her allegations against the father.
Although the jacket remained open in connection with the neglect case — one in which the mother was a successful complainant, and not the party accused of neglect — this circumstance provides no legal or logical support for an order depriving the mother of custody of her children. The protections of the child neglect statute discussed in Part II C, supra, which were afforded to the father in the proceeding instituted by the Corporation Counsel against him, were not made available to the mother. Indeed, the mother was deprived of custody of both children even though the first indispensable event in a neglect proceeding- — an allegation by the Corporation Counsel that a parent has neglected a child or children — has never occurred with respect to the mother. Because the neglect case involved only the conduct of the father, the mother has never had the benefit of any of the safeguards that follow the institution of such a proceeding.
Finally, the judge’s order deprived the mother of the custody of her son, M.C.S., Jr., even though neither parent was ever alleged to have neglected the boy, and even though no neglect proceeding was ever brought with respect to him. We agree with the statement in the mother’s brief that
[wjhile a parent’s abusive conduct towards one child may justify removal of custody of both the child and his or her siblings (see In re S.G., 581 A.2d 771, 780 (D.C.1990)), this does not obviate the need to open a neglect proceeding on all of the children sought to be removed. Id. at 773 (“the government also filed separate neglect petitions with regard to S.G.’s younger half-siblings”).
Our conclusion that the judge lacked the authority to remove either child from the mother’s custody therefore applies with even more force to M.C.S., Jr.
III.
CONCLUSION
For the foregoing reasons, the judgment of the trial court is reversed. The case is remanded for further proceedings consistent with this opinion.

So ordered.

. In her order, the judge did not address at all the problem raised by the grandmother's non-party status in the divorce case, and by the grandmother's refusal to accept legal custody.

. This appeal does not present the question whether, and in what manner, the court may issue emergency relief protecting a child pending the institution of neglect proceedings by the Corporation Counsel.

. The trial judge also believed that her authority as parens patriae to act in the interest of the children supported the entry of her order. While that authority is broad, we have held that it must be exercised within the constraints established by the legislature. See, e.g., In re J.J.Z., 630 A.2d 186, 193 (D.C.1993), cert. denied, 511 U.S. 1072, 114 S.Ct. 1651, 128 L.Ed.2d 370 (1994); In re C.A.P., 356 A.2d 335, 345 (D.C.1976).

. Indeed, the children's guardian ad litem and the court’s probation officer were both of the opinion that the mother should retain custody of the children.

. The father was alleged to have abused only his daughter, J.A.S. There was no allegation that his son, M.C.S., Jr., had been neglected.