*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 12-FM-1886

FREDERICK RENEE RUFFIN, APPELLANT,

v.

ANTOINE MAURICE ROBERTS, APPELLEE.

Appeal from the Superior Court
of the District of Columbia
(DRB-2942-09)

(Hon. Alfred S. Irving, Jr., Trial Judge)

(Submitted  October 2, 2013                    Decided April 24, 2014)

*Michelle R. Bonner* for appellant.

*Alicia Wimbish* and *Keeshea Turner-Roberts*, Neighborhood Legal Services Program, for appellee.

Before BLACKBURNE-RIGSBY and MCLEESE, *Associate Judges,* and KING, *Senior Judge*.

BLACKBURNE-RIGSBY, *Associate Judge*:  Appellant Frederick Renee Ruffin challenges a Consent Custody Order awarding sole legal and physical custody of her biological son, A.R., to the child's biological father, appellee Antoine Maurice Roberts.  Ruffin claims that the trial court issued the order without her consent.

Alternatively, she argues that the trial court erred in determining that it did not have authority to order third-party visitation. We affirm.

## I.     Factual Background

Ruffin and Roberts were married in the District of Columbia and had A.R. in 2009. In 2010, Ruffin and Roberts legally separated and reached a temporary custody agreement, whereby Roberts was awarded physical custody of the child and Ruffin was accorded visitation rights. On January 7, 2011, Ruffin's maternal aunt, Vanessa Ruffin-Colbert, filed a motion to intervene as a third party, seeking visitation with the child. Roberts filed an opposition. Upon review, the trial court denied Ruffin-Colbert's motion and ordered the appointment of a guardian *ad litem*.[1] In October 2011, Ruffin was convicted of arson and ordered to stay away from Roberts, who was the complainant in that criminal case. Ruffin will likely remain incarcerated in Danbury, Connecticut, until September 2014. Roberts subsequently filed for divorce, and a status hearing was scheduled for August 23, 2012, to address the issues of divorce and child custody.

---

[1] The record reflects that the trial court's subsequent October 13, 2011, order appointed two guardians *ad litem*.

At the status hearing, Ruffin's trial counsel noted that both parties agreed to an absolute divorce. Ruffin's counsel also stated that "[w]ith regards to [the] custody, [Ruffin] does not object to [Roberts] having sole physical and legal custody of the child." Roberts' counsel concurred: "[r]egarding the issues of visitation and custody, we don't disagree with [Roberts] taking [on] sole legal and physical custody." Ruffin's counsel then raised the issue of third-party visitation, requesting that the child have contact and communication with Ruffin's maternal aunts, Vanessa Ruffin-Colbert and Sheila Ruffin. Roberts opposed the request as to Ruffin's maternal aunts, but stated that he would agree to visitation with Ruffin's sister and mother. After counsel for both parties outlined their respective positions, the guardians *ad litem* addressed the court, expressing concern that "having visitation with either [Ruffin's sister or mother] [but] not with [her maternal aunts] would be, sort of, the equivalent of not really having contact with her side of the family[.]" In light of the parties' incongruent positions and the opinion held by the guardians *ad litem*, the court requested that each party submit a brief on the issue of visitation.

On October 19, 2012, after reviewing the briefs and arguments, the trial court issued the Consent Custody Order awarding sole legal and physical custody of A.R. to Roberts, based on the consent of both parties to this agreement.

Additionally, the court denied Ruffin's request for A.R. to have third-party visitation with her maternal aunts after concluding that it did not have the authority to order such visitation over the objection of the custodial parent. Further, the court rejected Ruffin's assertion that her choice of third-party visitors be given "weighty consideration," noting that a non-custodial parent cannot override the sole legal custodian's right to make decisions in the minor child's best interest. The court likewise rejected Ruffin's contention that the Military Parents' Child Custody and Visitation Rights Act of 2011 ("Military Act"), D.C. Code § 16-914.02 (2012 Repl.), authorized the court to grant third-party visitation rights under these particular circumstances. This appeal followed.

## II. Discussion

### A. Ruffin's Consent to Legal and Physical Custody

On appeal, Ruffin first argues that the trial court erred in concluding that she unconditionally consented to giving up legal and physical custody. According to Ruffin, her consent was conditioned on the child's visitation with her maternal aunts and, therefore, because Roberts did not accept all the conditions of her offer, no agreement was reached. However, this contention is belied by the record,

which conclusively demonstrates that Ruffin unconditionally consented to giving legal and physical custody to Roberts, and that the issue of visitation was raised as a separate matter. *See Jordan v. Jordan*, 14 A.3d 1136, 1146 (D.C. 2011) ("We . . . apply a clearly erroneous standard to [the trial court's] findings of fact." (citing D.C. Code § 17-305 (a) (2001)).

At the status hearing, Ruffin's trial counsel stated: "[w]ith regards to [the] custody, [Ruffin] does not object to [Roberts] having sole physical and legal custody of the child." Roberts' counsel then agreed, stating: "we don't disagree with [Roberts] taking [on] sole legal and physical custody." At no time did Ruffin link her consent with her maternal aunts' visitation rights, which were discussed as a separate issue. The record delineates the separation; after agreeing on the issue of custody, Ruffin's counsel worded the visitation question as follows: "[t]he *remaining issue* is . . . the communication that . . . the child will have with [Ruffin's] family while [she's] away." (Emphasis added). Moreover, the manner in which Ruffin's counsel ended her colloquy with the trial court suggests that custody and visitation were distinct issues. Specifically, counsel stated: "[s]o I will, at this point[,] defer to the [g]uardians *ad litem*[] and to . . . plaintiff's attorneys with regards to where we stand on that issue [of visitation,] . . . [w]hich I

perceive is the *only* issue at this point that is the matter of contention." (Emphasis added).

The trial court also conceptualized the issues of custody and visitation discretely. The court stated that "[t]he only outstanding issue that the parties are unable to agree upon is whether Ms. Vanessa [Ruffin-Colbert] and Ms. [Sheila Ruffin] . . . [m]ay have visitation with the child. And so we're asking for additional briefing on that [issue] . . . ." When the court asked Ruffin if she approved of the agreement, Ruffin replied: "[y]es." Furthermore, the court concluded the hearing by finding "that the agreement [of custody] you've struck already serves this child's best interest and the remaining issue is whether the child should have contact . . . with the . . . other individuals you've indicated. All right?" Ruffin did not object; rather, she acknowledged the formulation of the remaining issue by saying "[t]hank you" to the judge. Accordingly, the record memorializes Ruffin's consent to Roberts acquiring sole legal and physical custody of the child, and shows that she raised her request for visitation with her maternal aunts as a distinctly separate issue. The trial court's decision to award sole legal and physical custody to Roberts (who is employed full time and whose mother assists in the child rearing) on the basis that the parties consented to the agreement was, therefore, not in error. *See* D.C. Code § 16-914 (h) (2012 Repl.) ("The Court

shall enter an order for any custody arrangement that is *agreed* to by both parents unless clear and convincing evidence indicates that the arrangement is not in the best interest of the minor child." (emphasis added)).

### B. The Trial Court's Authority to Order Third-Party Visitation

Alternatively, Ruffin contends that the trial court erred in concluding that it did not have legal authority to order third-party visitation to her maternal aunts, Vanessa Ruffin-Colbert and Sheila Ruffin. Ruffin argues that denying visitation to her aunts was contrary to the child's best interests, which she contends is the "decisive consideration." We are unpersuaded by this argument.

"As with other aspects of child custody, we will not reverse the trial court's rulings on visitation rights absent an abuse of discretion." *Galbis v. Nadal*, 626 A.2d 26, 29 (D.C. 1993) (citation omitted). In custody and visitation cases, "[a] proper exercise of discretion requires that a court fashion relief to foster and safeguard [the] child's best interests." *Wilkins v. Ferguson*, 928 A.2d 655, 667 (D.C. 2007) (alterations in original) (quoting *Lewis v. Lewis*, 637 A.2d 70, 72 (D.C. 1994)) (internal quotation marks omitted). "We review a trial court's legal determinations *de novo* but apply a clearly erroneous standard to its findings of

fact." *Jordan*, *supra*, 14 A.3d at 1146. Whether the trial court was authorized to order third-party visitation, at the request of a non-custodial parent whose parental rights have not been terminated over the objection of the custodial parent, is a legal question.

It is well-established that the trial court's authority to award custody arrangements pursuant to a divorce proceeding is derived from statute, specifically D.C. Code § 11-1101 and §§ 16-911, -914 (2012 Repl.).[2] *See W.D. v. C.S.M.*, 906 A.2d 317, 321 (D.C. 2006); *T.S. v. M.C.S.*, 747 A.2d 159, 163 (D.C. 2000). These statutory provisions apply equally to awards of parental visitation. *See Wilkins*, *supra*, 928 A.2d at 667 ("Read as a whole . . . § 16-914 addresses the care and custody of children *and parental visitation . . . .*" (emphasis added) (citation omitted)). In this case, the most relevant statutory provision to be considered is § 16-914. Subsection (a)(1)(A) states in pertinent part:

---

[2] Section 11-1101 designates the trial court's jurisdiction over family law matters. Specifically, subsections (a)(1) and (4) state, in pertinent parts, that "[t]he Family Court of the District of Columbia shall be assigned and have original jurisdiction over . . . actions for divorce . . . including proceedings incidental thereto for . . . support and custody of minor children[,]" and "actions seeking custody of minor children, including petitions for writs of habeas corpus." Section 16-911 articulates the trial court's authority to fashion certain relief during the pendency of a divorce action; subsection (a)(5) states that "[d]uring the pendency of an action for divorce . . . the court may . . . determine, in accordance with section 16-914, the care and custody of a minor child or children pending final determination of those issues."

> In any proceeding between parents in which the custody of a child is raised as an issue, the best interest of the child shall be the primary consideration. . . . The Court shall make a determination as to the legal custody and the physical custody of a child. A custody order may include:
>
> > (i)     sole legal custody;
> > (ii)    sole physical custody;
> > (iii)   joint legal custody;
> > (iv)   joint physical custody; or
> > (v)    any other custody arrangement the Court may determine is in the best interest of the child.

Additionally, subsection (a)(2) gives the court broad leeway in fashioning parental visitation arrangements in the best interest of the child. *See Wilkins*, *supra*, 928 A.2d at 667 ("[O]ur statutes pertaining to parent/child matters 'presume[] that contact with both parents is normally in the best interests of the child.'" (brackets in original) (citations omitted)). Specifically, it states:

> Unless the court determines that it is not in the best interest of the child, the court may issue an order that provides for frequent and continuing contact *between each parent and the minor child or children* and for the sharing of responsibilities of child-rearing and encouraging the love, affection, and contact between the minor child or children and the parents regardless of marital status.

D.C. Code § 16-914 (a)(2) (emphasis added). While the trial court is granted wide latitude in these matters, its authority to fashion and award custody and visitation

arrangements "in the best interest of the child" is not without limit. For this principle, our decision in *T.S. v. M.C.S.* is instructive.

In *T.S.*, the father filed an action for divorce and moved the court to modify the custody award that gave the mother permanent custody of their two children. 747 A.2d at 160. During the pendency of the father's motion to modify custody, the mother alleged that her daughter was sexually abused by the father and reported the matter to the government, who thereafter filed a neglect petition against the father. *Id.* A fact-finding hearing was held regarding the neglect allegations and the trial court later found the father guilty and deemed the daughter neglected. *Id.* at 161.

Subsequently, the hearing on the father's motion to modify custody was held "in the shadow[s]" of the neglect action. *Id.* Recognizing that the father's chances for custody were slim given the finding of sexual abuse, his trial counsel asked that the children be placed with a third-party custodian, namely, their maternal grandmother, on the basis that it was in the best interest of the children. *Id*. The mother vehemently objected. *Id.* The trial court awarded custody of both children to the maternal grandmother relying on then D.C. Code § 16-911 (a-2)(1)(E), now § 16-914 (a)(1)(A)(v), which authorizes the court to fashion "any other custody

arrangement the [c]ourt may determine is in the best interest of the child." *T.S.*, *supra*, 747 A.2d at 164.

On appeal, we rejected such a broad reading of the statutory provision. Construing the District of Columbia's divorce statutes as a whole, we concluded that "these provisions authorize the court to determine custody *only* as between the parties to the proceeding, ordinarily the parents of the child or children. These statutes do not authorize the court to award custody to a non-party." *Id.* at 163 (emphasis added). We specifically rejected the idea that the statutory language: "any other custody arrangement the court may determine is in the best interest of the child[,]" authorized the court to grant custody to a third-party. *Id.* Rather, we concluded that "[t]he most reasonable construction of this provision is that the court may award joint or sole legal or physical custody to one or both parents, but that the court may also adopt 'any other custody arrangement' between the parents." *Id.* at 164. This construction of the divorce statutes comports with the fundamental right of a parent to raise his or her child, and that "the parent be afforded all of the protections provided by law." *Id.* at 162 (citing *In re J.F.*, 615 A.2d 594, 597 (D.C. 1992)). Unlike the District of Columbia's child neglect statutes, the District of Columbia's divorce statutes "do not include the procedural

safeguards to which a parent is entitled before custody can be taken from the parent and awarded to a non-parent."[3] *Id.* at 163.

Applying our decision in *T.S.* to this case, we conclude that the trial court did not abuse its discretion in determining that it lacked legal authority to grant Ruffin's request for third-party visitation over the objections of the sole legal and physical custodian, Roberts. Since the trial court's authority to grant visitation derives from the same statutes as child custody, *see Wilkins*, *supra*, 928 A.2d at 667, as in *T.S.*, in relation to the limits of the trial court's authority to grant custody, in this case, the trial court's authority to grant visitation must similarly be limited to the *parties* to the proceeding, i.e., Ruffin and Roberts, the biological

---

[3] We also recognized that there are practical considerations for concluding that the divorce statutes only authorize the award of custody to a parent who is a party to the proceeding, stating:

> The parties to an action are properly before the court. Ordinarily, one parent has initiated the proceeding, while the other has been served with process. The court will thus have no difficulty in enforcing its orders. The situation is quite different with respect to non-parties. In the present case, for example, there is no evidence that the grandmother has been served, and she is not represented by counsel. The divorce statutes contain no provision under which the court could enforce its orders against a non-party who has not submitted herself to the jurisdiction of the court.

*T.S.*, *supra*, 747 A.2d at 164.

parents. The same constitutional and procedural concerns in the custody ambit apply equally in the visitation context. *See Troxel v. Granville*, 530 U.S. 57, 67-68 (2000) ("[W]e have recognized the fundamental right of parents to make decisions concerning the care, custody, and *control of their children*." (emphasis added)).

Further, nothing in the plain language of § 16-914 leads us to believe that the trial court can award visitation rights to third-parties, or that visitation is somehow treated differently from custody. In fact, § 16-914 (a)(2) explicitly states that "[u]nless the court determines that it is not in the best interest of the child, the court may issue an order that provides for frequent and continuing contact *between each parent and the minor child or children . . . .*" (Emphasis added). The statute thus emphasizes that the trial court's authority to fashion visitation is premised on the public policy of fostering the *parental* relationship. Moreover, subsection (a)(1)(B) makes clear that Ruffin's decision to consent to legal and physical custody of A.R. to Roberts conveyed to Roberts the exclusive right, as the sole custodial parent, to determine visitation. *See* D.C. Code § 16-914 (a)(1)(B)(ii) ("'Physical custody'" means a child's living arrangements. The term 'physical custody' includes a child's residency or *visitation schedule*." (emphasis added)). Thus, there is no basis for the trial court to overrule the decision of the custodial parent on this matter and order visitation to a non-party. *See, e.g.*, *Troxel*, *supra*,

530 U.S. at 68-89 ("[S]o long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children."). Accordingly, the trial court did not err in concluding that it was without authority to order third-party visitation to Ruffin's maternal aunts.[4]

Ruffin contends that, because "the best interest of the child is the decisive consideration," the trial court is authorized to order third-party visitation over the objections of Roberts. In support, Ruffin points to the fact that the guardians *ad litem* supported her visitation request at the hearing. However, this argument was essentially already rejected in *T.S.* In that case, we rejected the trial court's reliance on now § 16-914 (a)(1)(A)(v) in awarding custody to the children's maternal grandmother, even though it "conscientiously" believed that awarding her custody was in the children's best interest. *T.S.*, *supra*, 637 A.2d at 162. Reading the statute as a whole, it was clear that the provision only pertained to any custody

---

[4] We note that the trial court explicitly granted Ruffin continued contact with her son via mail and telephone, even though a physical visitation schedule was not feasible given her incarceration. *See* § 16-914 (a)(2).

arrangement between the parents that is in the best interest of the children. *Id.*[5] Consequently, while we recognize that the trial court must seek to ensure the best interests of the child in all custody and visitation matters, *see In re S.L.E.*, 677 A.2d 514, 519 (D.C. 1996), that decision-making power cannot exceed its authority under the divorce statutes, which limits any court-designated arrangement (either custody or visitation) as between the parties to the proceeding.[6]

Ruffin also argues again on appeal that the Military Act, D.C. Code § 16-914.02, authorized the trial court to order third-party visitation over Roberts' objection. That statute allows deployed military parents with visitation rights the ability to designate family members to visit their children while they are away. *See*

---

[5] As in *T.S.*, we again emphasize, however, that a trial judge is not "powerless" to act in the event that both parents appear "unfit." *See T.S.*, *supra*, 747 A.2d at 164. "In such circumstances, the judge may bring his or her concerns to the attention of the Director of Social Services or of the [Office of the Attorney General]; the latter may then institute proceedings pursuant to the child neglect statutes." *Id.* That is not the situation here.

[6] To the extent Ruffin relies on *In re K.D.*, 26 A.3d 772, 778 (D.C. 2011), to support the contention that weighty consideration must be given to a parent's choice of selecting third party visitors for a minor child, we conclude that the case is inapposite. *In re K.D.* concerns a parent's decision-making authority regarding adoption, not visitation. Furthermore, unlike the minor child in *In re K.D.*, A.R. has a "fit" custodial parent who is authorized with sole legal and physical custody. Appellant is correct that "a parent's choice of a fit custodian . . . must be given weighty consideration[.]" *In re T.J.*, 666 A.2d 1, 11 (D.C. 1995). Ruffin, however, exercised that choice by consenting to Roberts' status as A.R.'s sole custodian.

D.C. Code § 16-914.02 (b)(4)(A). However, simply put, Ruffin cannot rely on that statute in requesting visitation because she is not a deployed military parent. As the trial court properly distinguished, "[Ruffin's] circumstances, having been incarcerated for an intrafamily offense, are certainly not analogous to the circumstances of men and women who are separated from their families in service to their country." Moreover, the trial court astutely recognized that the existence of the specialized Act lends support to the argument that, absent specific statutory authority, it cannot award third-party visitation under general circumstances. Accordingly, the Military Act is not applicable to this case.

## III. Conclusion

The trial court did not err in its Consent Custody Order. The record decisively demonstrates that Ruffin unconditionally consented to giving legal and physical custody of A.R. to Roberts. Further, we discern no error with the trial court's determination that it lacked statutory authority to award third-party visitation rights to Ruffin's maternal aunts over the objection of Roberts, the custodial parent. Accordingly, the trial court's order is

*Affirmed.*