*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

No. 15-FM-379

GWENDOLYN LITTMAN, APPELLANT,

v.

ANDREW CACHO, APPELLEE.

FILED **7/21/16**
District of Columbia
Court of Appeals

*Julio Castillo*
Julio Castillo
Clerk of Court

Appeal from the Superior Court
Of the District of Columbia
(DRB-3197-03)

(Hon. Jennifer Di Toro, Trial Judge)
(Hon. Anthony Epstein, Motions Judge)
(Hon. Craig Iscoe, Motions Judge)

(Submitted April 15, 2016                    Decided July 21, 2016)
(Amended August 11, 2016)[1]

*Gwendolyn Littman*, Pro Se.

No brief was filed for appellee.

Before FISHER and BECKWITH, *Associate Judges*, and NEWMAN, *Senior Judge*.

---

[1] The case caption, opening paragraph, and Part I of this opinion have been amended *sua sponte* to clarify the roles of the three trial judges involved in various aspects of this case and to provide further context to the order from which appellant Gwendolyn Littman appeals. This decision upon reissuance is otherwise unchanged.

NEWMAN, *Senior Judge*: On July 12, 2013, Judge Di Toro issued the "Second Amended Findings of Fact, Conclusions of Law, and Order of Permanent Custody" (the "July 2013 Custody Order"), which provided, *inter alia*, that appellant Gwendolyn Littman would have "reasonable rights of visitation [with her grandson A.L.], to be arranged by the parties, and to include overnight visitation by agreement of the parties." Subsequently, Judge Iscoe terminated Littman's visitation rights with A.L. in an Order Modifying "Second Amended Findings of Fact, Conclusions of Law, and Order of Permanent Custody" (the "Modification Order"). In this appeal, Littman claims that the trial court erred as a matter of law in terminating her visitation rights with A.L. and asks us to "reverse the trial [c]ourt and rule in her favor." We hold that the trial court relied on erroneous legal principles and therefore abused its discretion in terminating Littman's visitation rights. Consequently, we vacate the Modification Order and reinstate the July 2013 Custody Order.

## I. Facts

A.L. was born in April of 2002, after which he lived with his mother and Littman. His mother passed away in October of 2003, and on November 14, 2003,

Littman successfully sought a court order for custody of A.L.[2]  A.L. continued to live with Littman until February of 2004, when custody was transferred to his father, appellee Andrew Cacho, by court order.[3]  With Cacho's consent, Littman filed a motion to modify custody on November 19, 2004, and regained custody over A.L. pursuant to a March 4, 2005, court order.  Cacho later sought to modify the order granting Littman custody of A.L., filing two motions—one on February 21, 2006, and the other on March 16, 2007—to modify custody.  After more than seven years of litigation on the motions, during which A.L. remained in Littman's custody while visiting with Cacho, Judge Di Toro ultimately granted the motions and, in the July 2013 Custody Order, awarded Cacho primary physical and sole legal custody of A.L., with "reasonable rights of visitation, to be arranged by the parties, and to include overnight visitation by agreement of the parties" to Littman.

A little over a year later, Littman filed the first of several motions for contempt, alleging that Cacho refused to allow her to see A.L. in violation of the July 2013 Custody Order.  In response, Judge Epstein issued an Order Scheduling

---

[2]  Littman also sought custody over six of A.L.'s siblings.

[3]  The record is unclear on what A.L.'s actual living situation was after Cacho obtained custody over him.

Hearing, in which he set a hearing date for Littman's motion for contempt[4] and informed the parties that he would "also address [at the hearing] whether Ms. Littman's visitation rights should be terminated as inconsistent with Mr. Cacho's parental rights."

As for why he was considering terminating Littman's visitation rights, Judge Epstein explained that he had doubts about whether the July 2013 Custody Order complied with the requirements of the District's third party custody statute. He noted that the statute (a) provides the only circumstances in which the court can "order a parent to allow visitation by a third party"; (b) establishes that, absent parental consent to third party custody, "there is a rebuttable presumption . . . that custody with the parent is in the child's best interests"; and (c) requires a third party seeking custodial rights to rebut the presumption of parental custody by clear and convincing evidence before the court may grant custodial rights to the third party. Despite this statutory requirement, Judge Epstein observed that the order granting Littman visitation with A.L. "does not include an express finding that Ms. Littman rebutted the presumption of parental custody by clear and convincing

---

[4] Prior to the eventual hearing, Littman filed two additional motions for contempt, one of which was labeled as an "Emergency" motion. The trial court held an *ex parte* hearing to determine if an emergency existed, found there was none, and postponed further argument until the scheduled hearing on Littman's original motion for contempt.

evidence," an omission he considered significant enough to raise serious doubts about the validity of the July 2013 Custody Order insofar as it granted Littman visitation with A.L.[5]

At the eventual hearing on Littman's motions for contempt, Judge Iscoe followed through on the plan to address the validity of the prior order granting Littman visitation with A.L. Citing this court's decision in *Ruffin v. Roberts*, 89 A.3d 502 (D.C. 2014), Judge Iscoe stated that the "trial court does not have

[5] As we explain below, the trial court did not rely on these grounds for its decision to terminate Littman's visitation rights. We therefore need not consider whether, despite principles of res judicata and finality, these would be proper grounds for reconsidering a final order of the court granting Littman visitation rights—an order that Cacho declined to appeal to this court notwithstanding its "claimed" legal infirmity. *See Moran v. Moran*, 160 F.2d 925, 927 (D.C. Cir. 1947) ("Lack of power to enter a wrong judgment is remediable upon appeal; and if the judgment, even though erroneous, is not appealed within the time allowed, it is res judicata of the issues involved."); *cf.* D.C. Code § 16-831.11 (a) (2012 Repl.) ("An award of custody to a third party under this chapter may be modified upon the motion of any party, or on the court's own motion, *upon a determination that there has been a substantial and material change of circumstances and that the modification or termination is in the best interests of the child*." (emphasis added)). Nor do we need to decide whether this Modification Order meets due process notice requirements since we vacate the decision on other, non-constitutional grounds. *See In re N.N.N.*, 985 A.2d 1113, 1122 (D.C. 2009) ("An essential ingredient 'of due process in any proceeding which is to be accorded finality is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' Notice *must reasonably convey the necessary information . . . .*" (emphasis added) (internal citations omitted) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 315 (1950))).

authority to order third-party visitation" and thus that "there cannot be third-party visitation ordered in this case." Consequently, he orally denied Littman's motions for contempt "because contempt of Court is for willful violation of a lawful court order" and "[i]n this case, the court order is not lawfully imposed."[6] Thereafter, consistent with the discussion at the hearing, Judge Iscoe issued a written order holding, based on *Ruffin*, that the trial court "is without authority to require defendant-father Mr. Cacho to allow third-party Gwendolyn Littman visitation with [A.L.]" and ordered that "Littman is no longer entitled to Court-ordered visitation with [A.L.]" Judge Iscoe explained that "this order is not intended to discourage Mr. Cacho from voluntarily allowing Ms. Littman to visit with her grandson." Littman timely filed a notice of appeal.

## II. Discussion

### A. Standard of Review

Littman claims on appeal that the trial court improperly applied this court's decision in *Ruffin* to terminate her visitation rights. She argues that we should

---

[6] Littman does not challenge the denial of her motions for contempt in this appeal.

review her claim *de novo*, as it raises a question of law. Ordinarily, "[w]e will only reverse a trial court's order regarding child custody upon a finding of manifest abuse of discretion." *Jordan v. Jordan*, 14 A.3d 1136, 1146 (D.C. 2011) (internal alteration omitted). However, "the trial court's use of judicial discretion must be grounded upon correct legal principles," *id.* (internal quotation marks omitted), and a trial court's exercise of discretion premised on incorrect legal principles is an abuse of discretion, *see Johnson v. United States*, 398 A.2d 354, 365-67 (D.C. 1979); *accord In re J.D.C.*, 594 A.2d 70, 75 (D.C. 1991) ("[A] trial court abuses its discretion when it rests its conclusions on incorrect legal standards."). Furthermore, "[w]e review a trial court's legal determinations *de novo*." *Jordan*, 14 A.3d at 1146. After reviewing the trial court's oral findings and written order, we agree with Littman that the trial court's decision to terminate her visitation rights was premised on a legal determination—namely, the trial court's determination that our decision in *Ruffin* foreclosed its authority to order third party custody over the objections of a parent—and we thus review that determination *de novo*. *Id.*

**B. Analysis**

The Family Division of the Superior Court has jurisdiction over "actions seeking custody of minor children." D.C. Code § 11-1101 (a)(4) (2012 Repl.). Title 16, Chapter 8A of the District of Columbia Code governs proceedings in actions for third-party custody. Chapter 8A empowers a third party to "file a complaint for custody of a child or a motion to intervene in any existing action involving custody of the child" in various circumstances. D.C. Code § 16-831.02 (a)(1). Chapter 8A also empowers the Superior Court to enter orders granting custody to third parties, including granting sole legal and physical custody to the third party, joint legal and physical custody between the third party and a parent, or "[a]ny other custody arrangement the court determines is in the best interests of the child." D.C. Code § 16-831.04 (a).[7] In appropriate circumstances, the court may issue such an order even where a parent objects to third party custody. *See* D.C. Code §§ 16-831.05, -831.06, -831.07.

Notwithstanding this clear statutory grant of authority, the trial court relied on *Ruffin* to conclude that it lacked authority to order Cacho, as a parent, to allow Littman to visit with A.L. A careful reading of *Ruffin*, however, reveals that we made no such broad statement about the trial court's authority to grant third party

---

[7] Such an arrangement may include visitation, as "[t]he term 'physical custody' includes a child's . . . visitation schedule." D.C. Code § 16-831.01 (4).

visitation over parental objection. *Ruffin* involved a custody dispute ancillary to a divorce proceeding. As such, we noted "that the trial court's authority to award custody arrangements *pursuant to a divorce proceeding* is derived from statute, specifically D.C. Code § 11-1101 and §§ 16-911, -914 (2012 Repl.)." *Ruffin*, *supra*, 89 A.3d at 506 (emphasis added). *Ruffin*'s analysis of the trial court's (lack of) authority to order third party custody arrangements was thus clearly limited to the context of custody disputes ancillary to divorce proceedings arising under Chapter 9 of Title 16, *see id.* at 506-09, not custody disputes arising under Chapter 8A. Put another way, *Ruffin* stands only for the proposition that the trial court has no authority to order third party custody awards in a dispute governed by Chapter 9; nothing more. By contrast, the plain language of Chapter 8A vests authority in the trial court to order third party custody arrangements in disputes governed by Chapter 8A.[8]

This case began when Littman filed a complaint for custody over A.L. and her other grandchildren. As such, it is not governed by Chapter 9, but is instead governed by Chapter 8A. *Ruffin* is therefore clearly inapposite in the context of

---

[8] Nor did *Ruffin* deal with the relationship of the "intervention" language of § 16-831.02 (a)(1) and an existing divorce proceeding in which child custody is an issue.

this case, and the trial court erred as a matter of law in relying on *Ruffin* to conclude, contrary to the plain language of Chapter 8A, that it lacked authority to grant Littman visitation with A.L. over Cacho's objection. Consequently, the trial court abused its discretion when it terminated Littman's visitation in its Modification Order.[9] *See Jordan*, *supra*, 14 A.3d at 1146.

∗ ∗ ∗ ∗

For the foregoing reasons, we vacate the Modification Order and reinstate the July 2013 Custody Order.

*So ordered*.

---

[9] Because we so hold, we need not address Littman's alternative argument that the trial court's order terminating her visitation rights violated the Constitution's Ex Post Facto Clause. *See* U.S. CONST. art. I, § 9, cl. 3.